# N. W. DENNIE v. E. K. ISLER, Administrator.

Middle Section.    April 10, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

(1)

2

Jeff McCarn, of Nashville, for plaintiff in error.

Seth Walker and Levine & Levine, of Nashville, for defendant in error.

FAW, P. J. A few minutes before five o'clock in the afternoon of May 15, 1925, Mrs. Nettie Thomas Isler was struck by a Ford Sedan owned and driven by N. W. Dennie, and, as a result of the collision, Mrs. Isler suffered injuries which caused her death about two o'clock on the following morning.

The case now before us was begun on June 5, 1925, by E. K. Isler, both "in his individual capacity as husband" and as ad-

ministrator of the estate of his deceased wife. Mrs. Isler had no children and her surviving husband is the sole beneficiary of any recovery in this case.

N. W. Dennie has brought the case to this court by an appeal in the nature of a writ of error from a judgment of the circuit court of Davidson county for $5000, rendered on the verdict of a jury, and has assigned errors here.

The parties will be designated here as plaintiff and defendant, respectively, as they appeared on the record in the circuit court.

The plaintiff's declaration as originally filed contained seven separate counts, but the alleged negligent acts and omissions of defendant on which the case was finally submitted to the jury are stated in the charge of the trial court as follows:

"The declaration, among other things, substantially alleges that the plaintiff's wife, Mrs. Nettie Mai Thomas Isler, was negligently run over and killed by the defendant while driving his automobile in a careless and negligent manner; that the accident occurred on May 15, 1925, when the defendant had negligently failed to provide his car with suitable brakes and failed to turn around the center of the intersection of Eighth avenue, south, and Argyle avenue, where the accident occurred; and that the defendant failed to keep as near the right hand curb as possible, and that he failed to keep constant vigilance to avoid injury to pedestrians while turning into Argyle avenue, in violation of certain city ordinances which have been read as evidence in this case."

The defendant pleaded the general issue—not guilty.

The defendant's first, second and third assignments of error are as follows: (1) "There is no evidence to support the verdict;" (2) "the preponderance of the evidence when taken as a whole is against the verdict of the jury;" and (3) "the evidence shows the deceased, Mrs. Isler, at the time of the alleged injuries was guilty of contributory negligence which contributory negligence contributed to the accident as a proximate cause of the injuries."

It is obvious that the second and third assignments, supra, do not raise questions which can be considered by this court. It is too well settled in this State to need citation of authority that this court cannot weigh conflicting evidence in a case of this kind, but that the verdict of a jury, based on a correct charge, is conclusive on the appellate courts, if there is any material evidence to support it; and in determining this question we are required to consider the evidence tending to support the verdict in that aspect most favorable to the party successful below of which it is reasonably susceptible, and to discard all countervailing evidence.

However, if it appeared from the undisputed evidence that the deceased, Mrs. Isler, was, at the time she was injured, guilty of negligence which was a contributing proximate cause of the collision, such finding would support the first assignment of error, for, in that event, there would be no evidence to support the verdict upon a determinative issue. Traction Co. v. Brown, 115 Tenn., 323, 331-332, 89 S. W., 319.

It appears, without dispute, that defendant's Ford Sedan, driven by defendant, collided with plaintiff's intestate and inflicted injuries upon her which caused her death about nine hours later. The collision occurred at or near the intersection of Eighth avenue, south, and Argyle avenue in the City of Nashville. The general direction of Eighth avenue is north and south, and that of Argyle avenue is east and west, and Argyle avenue is about thirty-two feet wide from curb to curb. Deceased and her husband (the plaintiff) lived in a house on the lot situated at the northeast corner formed by the junction of the two streets just named, and their residence fronted on Argyle avenue—the entrance from the street being several feet east of Eighth avenue, south.

It is the theory of plaintiff that the deceased, Mrs. Isler, going southward, had just left the northeast corner and entered upon the crossing over Argyle avenue, which crossing was upon the east sidewalk of Eighth avenue, south, if extended across Argyle avenue, when defendant's car, coming from the north on Eighth avenue, south, turned east (to its left) into Argyle avenue, within less than five feet of the curb at the northeast corner, and struck Mrs. Isler while she was on the crossing, at a proper and lawful place for pedestrians to travel.

There is evidence that the collision in question occurred within the corporate limits of the City of Nashville, and that, as alleged in plaintiff's declaration, defendant was at the time violating certain municipal ordinances (1) in operating his car without a foot-brake in good and working order; (2) in turning east from Eighth avenue, south, into Argyle avenue, he did not turn around the center of the intersection of the two streets, but drove his car between the center of the intersection and the northeast corner, and within less than five feet of the curb at the northeast corner; (3) in not driving as near the right hand curb as possible, but driving much nearer the left hand curb than the right hand curb; and (4) in not exercising "constant vigilance to avoid injury to pedestrians."

At the time in question, Eighth avenue, south, was paved with bricks and Argyle avenue was surfaced with macadam. At the intersection of the two streets, the brick paving and the macadam met on the eastern marginal line of the Eighth avenue sidewalk extended; so that, the walkway, or "crossing," for pedestrians,

from the northeast corner to the southeast corner, was on the brick paving, and there is evidence in the record that Mrs. Isler was walking on the brick paving when she was struck by defendant's car.

On the other hand, defendant testified, in substance, that his car was about the center of Argyle avenue, or, "if any difference," a little south of the center, moving at a speed of about six miles an hour, when Mrs. Isler walked against his left front fender ("about two feet back of the front") and was knocked down; that, at the time of the collision, the rear end of his car was six or eight feet east of the eastern margin of the brick paving and that his car was eight or ten feet long. It thus appears that, according to defendant's testimony, Mrs. Isler was about the center of Argyle avenue and was somewhere from fourteen to eighteen feet east of the brick paving (the crossing) when she collided with the left front fender of defendant's car.

Defendant further testified that he saw Mrs. Isler "about a second or two" before his car came in contact with her; that "she was going diagonally across Argyle avenue from the pavement on the north side, headed toward the pavement on the south side;" that he put his brakes on and turned the steering apparatus as far to the south as he could turn it, but the collision occurred; that he could not tell how Mrs. Isler fell; that his car ran about two feet after the collision; that when the car stopped he got out immediately and found Mrs. Isler lying under the car—"immediately under the fly-wheel pan," which is three feet back of the front axle; that Mrs. Isler's feet were pointing southwesterly and her head was pointing northeasterly, and that neither of the wheels of the car passed over her body.

Defendant also testified that the brakes on his car (both foot brake and hand brake) were in good working order, and effective.

The defendant's testimony was corroborated in material respects by other witnesses introduced in his behalf, and there was also testimony by defendant's witnesses to the effect that, immediately before the collision, Mrs. Isler had her hands up and was looking down at her hands; that she "never looked up at all" from the time she stepped off the sidewalk until she came in contact with defendant's car.

It is seen from the foregoing statement that there is conflicting evidence with respect to the determinative issues in the case. "The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be

left to the jury.'' Roofing and Mfg. Co. v. Black, 129 Tenn., 30, 36, 163 S. W., 1183; 20 R. C. L., p. 166, Sec. 140.

Likewise, where the facts are in dispute, or are of such a character that different minds might draw different conclusions therefrom, the question as to what is the proximate cause of an injury is properly determinable by the jury. 22 R. C. L., p. 148, Sec. 31, and numerous cases there cited.

We find evidence in the record which, if accepted by the jury, is sufficient to support a finding that negligence of the defendant alleged in the plaintiff's declaration was the proximate cause of the injuries to plaintiff's intestate which resulted in her death, and that she was not guilty of proximate contributory negligence. Under the established rules before mentioned, the verdict of the jury is conclusive on this court. The first assignment of error is overruled.

Through his fourth assignment of error defendant complains of the action of the trial court in overruling his objection to certain testimony of the plaintiff E. K. Isler, which testimony, with defendant's objection thereto, may be seen from an excerpt from the record, as follows:

"Q. What was her custom and practice before going to work, if anything, in regard to whether she came to the store where you were? A. Yes, sir.

"Mr. McCarn: I don't think it is competent to prove custom.

"Mr. Walker: This is offered for the purpose of showing where she might have been going at the time of the accident."

Objection overruled.

Exception taken by defendant.

"Mr. Walker: Q. You say it was her custom and practice then to come to the store where you were? A. Very frequently, yes, sir.

"Q. Had you ever or not on occasions before that, noticed the route she would take in going from the residence towards the store, as to whether she crossed Argyle avenue, and then crossed over Eighth or whether she just crossed over Eighth, and go on the west side?

"Mr. McCarn: We object as to whether he noticed how she went before that time.

"The Court: What she did before might throw some light on what she did at this time. It is just a circumstance. I will overrule the objection."

Exception taken by defendant.

"Mr. Walker: Q. Proceed? A. I would not say there was any particular rule. She always crossed at the corner.

".Q. At what corner? A. Occasionally I have noticed her crossing right across Eighth, coming over, I guess to keep from making two crossings, go over to the west side.

"Q. You saw her cross Eighth avenue, then, and not Argyle? A. Yes, sir.

"Mr. McCarn: All these questions and answers are objected to also, Your Honor.

"The Court: All right, same ruling."

Exception taken by defendant.

In reply to this assignment, it is said, among other things, on behalf of plaintiff, that the objection to this testimony, as made at the trial, amounted to no more than a general objection, which will not suffice to put the trial court in error; that an objection which does not point out the specific ground or grounds upon which it is claimed the evidence is not admissible is insufficient. The rule which plaintiff thus seeks to invoke is well supported by authorities cited in the brief of counsel. Lively v. American Zinc Co., 137 Tenn., 261, 279, 191 S. W., 975; American Lead Pencil Co. v. Davis, 108 Tenn., 251, 254, 66 S. W., 1129; Crane v. State, 94 Tenn., 86, 89, 28 S. W., 317.

But we do not think the objection in this instance was so indefinite as to fall within the condemnation of the rule just stated. The statement of counsel that he did not think it "competent to prove custom" was equivalent to an objection to the admission of evidence which he did not consider competent, and, when read in connection with the question to which it was directed, it appears with reasonable certainty, we think, that counsel was objecting on the ground that evidence of a "custom and practice" of the deceased to go to the store where the witness, her husband, was employed was not competent evidence that she was on the way to that place when she was injured. That the trial judge so understood the objection appears from his statement included in the above quotation from the record that, "what she did before might throw some light on what she did at this time. It is just a circumstance."

However, we find no reversible error in the admission of the testimony questioned by the fourth assignment, for the reason that it was immaterial and harmless. Plaintiff E. K. Isler was the first witness examined at the trial, and he did not claim to know where the deceased was, or where or which way she was going, when she was injured. Plaintiff was at the store where he was employed, which store was situated on the west side of Eighth avenue, south, about a block south of the place of the accident, and he did not see the collision. All the proof, both for plaintiff and defendant, tends to show that deceased was crossing from the north to the

south side of Argyle avenue when the collision occurred—the plaintiff's proof tending to show that she was on the crossing in line with the eastern sidewalk of Eighth avenue, and the defendant's proof tending to show that she was in Argyle avenue several feet east of the east line of Eighth avenue, south. Each of these contentions was in harmony with the theory that Mrs. Isler was on the way to the store where plaintiff worked, but whether or not that was her intended destination was and is immaterial.

The substance and purpose of the testimony quoted in the fourth assignment is that the witness had, on previous occasions, observed Mrs. Isler (when on her way from her home to plaintiff's place of business) crossing Eighth avenue, from the northeast corner of Eighth and Argyle, over to the west side of Eighth avenue, south, without crossing Argyle, as west Argyle enters Eighth avenue further north than east Argyle.

It seems obvious that, as the real issue developed (concerning the exact location of Mrs. Isler at the time she was injured) the testimony copied into defendant's fourth assignment, supra, became wholly irrelevant and immaterial, and that it could not have affected the verdict of the jury in any manner whatever. The fourth assignment of error is overruled.

Defendant's fifth assignment is that the trial court erred in overruling his objection to that part of the testimony of plaintiff's witness Baxter Cobb (a motorcycle officer), which testimony appears in the record as follows:

"Q. Did you see his automobile? A. Yes, sir.

"Q. Where was his automobile at that time?

"Mr. McCarn: We object to the question as to where his automobile was at that time, Mr. Cobb was ten or fifteen blocks from there when it occurred. It is not material where it was at that time.

"Mr. Walker: Your Honor will see the materiality of it, what the defendant said where his automobile had been and all about it. We will develop that by Mr. Cobb."

Objection overruled.

Exception noted by defendant.

"Q. At the time you got there, where was the defendant's automobile? A. Sitting in Argyle avenue, to the left of Eighth."

And defendant's sixth assignment is that the trial court erred in overruling his objection to that part of the testimony of plaintiff's witness Baxter Cobb which appears in the record as follows:

"Q. Did you, in company with the defendant, Mr. Dennie, commence at the back of the defendant's car, and point out to him his automobile tracks? A. I did.

"Q. On the left hand side of Argyle avenue, and trace it back to where he cut this corner at Eighth avenue and Argyle?

"Mr. McCarn: We object to that, as it is a presumption that he cut the corner. Further, it does not make any difference whether he went with Mr. Dennie or not, and whether he knew where the tracks were, and the question includes cutting the corner.

"The Court: Maybe that is the only way they can show it, by circumstances. They may have direct proof or not, but they have a right to prove it by circumstances, if they can."

I overrule the objection.

Exception taken by defendant.

"Q. State what you did, who was with you and what the defendant said. A. I arrested Mr. Dennie, and he wanted to know on what charge, and I told him violating the traffic law, which at that time was————

"Mr. McCarn: We object, Your Honor, to his telling us what the traffic law was."

Objection sustained.

"A. He wanted to know how he violated it, and I showed him."

The significance of that part of Baxter Cobb's testimony to which objection was made as aforesaid can be better understood by quoting an excerpt immediately following it in the record, as follows:

"Mr. Walker: Q. What did you show him? A. Followed the track from the left hind wheel of his automobile clean back into Eighth avenue, where he cut that corner too near the left hand side.

"The Court: Do you know which way his car came from when it entered Argyle? A. No, sir, I know how it was when I got there.

"Mr. Walker: Q. Where did the tracks lead back to? A. To Eighth avenue, from his car.

"Q. Could you see any tracks in Eighth avenue, showing whether it came from the south or north? A. Yes, sir, it came from the north."

We entertain no doubt that the testimony copied in the fifth and sixth assignments, supra, was competent and admissible, and those assignments of error are overruled.

The seventh assignment is that the trial court erred in overruling defendant's motion to direct a verdict for defendant on the fourth count of the declaration; and the eighth assignment is that the trial court erred in overruling defendant's motion to direct a verdict on the sixth count of the declaration.

The motions mentioned in the seventh and eighth assignments, supra, were made at the close of the plaintiff's proof in chief, and defendant is not now in a position to rely on these motions because he did not renew them at the close of all the evidence. By putting on evidence in his own behalf defendant waived the benefit of the motion for peremptory instructions which he had previously made. Nashville Railway & Light Co. v. Henderson, 118 Tenn., 284, 99 S. W., 700; John Gerber Co. v. Smith, 150 Tenn., 255, 261, 263 S. W., 974; Coal and Iron Co. v. Bennett, 8 Hig., 210. The seventh and eighth assignments of error are overruled.

The ninth assignment is based on the action of the trial court in overruling defendant's objection to a part of the cross-examination of defendant Dennie, embraced in an excerpt from the record, as follows:

"Q. Why didn't you come around like this diagram on the blackboard, what reason was there to keep you from doing that?

"Mr. McCarn: We object to that, your Honor. I suppose anyone who ever drove a car knows it is impossible to do that. You cannot turn at right angles, with an automobile. I have tried it sometimes, but always failed.

"Mr. Walker: I assume it is possible for someone to comply with the law.

"Q. I will ask you why you didn't drive your car around the intersection of that street, as prescribed in section 5 of No. 1041 of the city ordinances of Nashville?

"Mr. McCarn: We object to that, because if he drove as he said he did, it was a substantial compliance with that ordinance. He is assuming that he didn't do it.

"Mr. Walker: Q. Do you mean to say you complied with the city ordinance and that mark which you drew there representing you coming from the west side of Eighth avenue, into Argyle, is anything like subsection 5 of section No. 1041 of the city ordinance.

"Mr. McCarn: I object to that on the ground that it is for the jury to say whether he complied with the city ordinance or not. It is for the jury to say.

"Mr. Walker: What I am after, is for him to explain why he didn't drive the automobile like the city ordinance prescribed for it."

Objection overruled.

Exception noted by defendant.

The latitude which may be allowed counsel in the cross-examination of a witness is largely within the discretion of the trial court, and the exercise of this discretion will "rarely furnish grounds for a new trial." 28 R. C. L., p. 599, Sec. 188. We find no abuse

of discretion in this instance, and the ninth assignment of error is overruled.

Through his tenth assignment the defendant complains of a statement of the trial judge made in the presence of the jury, which appears from the following excerpt from the record:

"Q. So, all the time from the time Mr. Dennie turned this corner, in fact, while he was out in Eighth avenue, looking down this street, this lady was in full view of him, wasn't she?

"Mr. McCarn: This lady had not undertaken to say whether Mr. Dennie came from the north or the south, or came down from the skies or out of the earth. This lady cannot know what he was doing for she says, 'I didn't see him until he got on Argyle avenue.'

"The Court: She has just testified she saw the car, and the woman, and that the woman was immediately in front of the car, but a little to the left and she could see the deceased all the time, until they came in contact with each other. Now the question is, after you saw the car, as I remember it, after you saw that car in Argyle and saw her in Argyle, how far were they apart. Is that it?

"Mr. Walker: No, sir, was there anything to obstruct the view of Mr. Dennie from seeing her.

"Mr. McCarn: I don't remember about that."

No exception to said statement of the court was reserved. If the court's statement had been challenged by proper exception, it would have afforded an opportunity for the recollection of the court to have been verified or shown to be in error by reference to the stenographer's notes. As a matter of course, if the court correctly stated the testimony of the witness, defendant has no cause of complaint; but if the recollection of the court was at fault, the error was waived by defendant's failure to except. Southwestern Tel., etc., Co. v. Abeles, 94 Ark., 254, 126 S. W., 754, 21 A. and E. Anno. Cas., 1006, 1009; 2 R. C. L., pp. 92-93, Sec. 68; Hobbs v. State, 121 Tenn., 413, 418, 118 S. W., 262; National Hosiery & Yarn Co. v. Napper, 124 Tenn., 155, 170, 135 S. W., 780. The tenth assignment of error is overruled.

The defendant's assignments of error numbered consecutively eleven to sixteen, inclusive, challenge, as erroneous, the action of the trial court in refusing to give in charge to the jury six special requests for instructions, tendered by defendant and numbered one to six, inclusive, which requests are as follows:

"Request No. 1. The court charges you that if you find a want of ordinary care or caution on the part of the deceased, Mrs. Isler, at the time of the injuries from which she lost her life, concurring as a proximate cause in producing the injuries,

12

the defendant is not liable although you may find him also at fault. That is, in case you find that the proximate cause of the injury to Mrs. Isler was the negligence of both parties; that is, Mrs. Isler, and the defendant, Dennie, then in that case the defendant would not be liable."

"Request No. 2. I charge you further that the plaintiff cannot recover if the action of the deceased, Mrs. Isler, at the time of the injuries, received by her and just prior thereto, was wholly or in part the proximate cause of the injury, or if such want of ordinary care on her part in any way contributed directly to the injury."

"Request No. 3. I charge you that it is not a question for you to determine which of the parties, Mrs. Isler or the defendant Dennie, was more negligent than the other, for if the negligence or want of ordinary care on the part of Mrs. Isler in any degree proximately contributed to the injury, the plaintiff cannot recover."

"Request No. 4. I charge you that to state the rule as to contributory negligence on the part of the injured or deceased person in another form, than that heretofore stated, I would say that the negligence or misconduct of the person injured or killed, in order to bar a recovery of damages, must have sustained such a relation to the accident that, but for such negligence, the accident would not have occurred. In other words, if you should find that the deceased Mrs. Isler violated an ordinance of the City of Nashville, in crossing the street as she undertook to do, that violation of the city ordinance would be equal to a prima-facie case of negligence, and if you find further that this violation of the ordinance in question concurred with the negligence of the defendant as a proximate cause of the injury, then the plaintiff could not recover."

"Request No. 5. I charge you further that it was the duty of the defendant in driving his automobile to use ordinary care in an effort to see any obstruction in the way of his progress, but the entire obligation to prevent collision cannot be assumed as a matter of law by the defendant, for the deceased, Mrs. Isler, was also under a duty to observe and to discover the approach of vehicles or traffic on the street, and if you find that she failed to make any effort to see whether vehicles were approaching and if you find that she walked diagonally across the street at a place other than a regular crossing for pedestrians, and that in walking across the street she was engaged in an examination of her wrist watch or anything else that kept her attention from the road or possible collisions, then she would be guilty of negligence, and if you find that

that act or conduct was a proximate cause bringing about the injury or concurring with any negligence of the defendant to bring about the collision, then, in that case, the plaintiff could not recover.''

"Request No. 6. Again I charge you that although the defendant may have been guilty of a want of ordinary care, or he may have violated a city ordinance, which act contributed to produce the injury complained of, yet this will not entitle the plaintiff to recover damages of the defendant, if the deceased, Mrs. Isler, could have avoided the consequences of the defendant's negligence by the exercise of ordinary care.''

It is seen that the fundamental proposition embodied in each of the six requests, supra, is that if the deceased, Mrs. Isler, was guilty of negligence or want of ordinary care which, in any degree, proximately caused or contributed to her injury, the plaintiff cannot recover. The jury was correctly instructed on this subject several times in the charge given to the jury, as appears from excerpts taken from the charge, as follows:

"If the defendant should be the only party thus guilty, the defendant would be liable for the injury. If the person injured should be the guilty party, then the defendant would not be liable for the injury. If both parties should be guilty of such negligence, that is negligence directly and proximately causing or contributing to the injury, still, the defendant would not be liable.

.  .  .  .  .  .  .

"This case is based on the alleged negligence of the defendant, and the defendant, among other things, contends that the deceased, Mrs. Isler, was guilty of negligence, which proximately caused or contributed to her own injury, which, if true, would bar a recovery.

"Negligence, as applied to either the person injured, or the defendant, in a case like this, means the failure to exercise ordinary care, that is, such care as an ordinarily prudent person would exercise under circumstances similar to those shown by the evidence in this case.

.  .  .  .  .  .  .

"On the other hand, gentlemen, it was the duty of the deceased, Mrs. Isler, while crossing Argyle avenue at its intersection with Eighth avenue, south, to go straight across at right angles, as near as practicable. And it was also her duty to be on the lookout for automobiles that might be coming that way, and to do everything in the way of observing ordinary care for her own protection. And if you shall find from a preponderance of all the evidence, that she failed to perform

her duty in these respects, or any of these respects, and if such failure was the proximate cause of the injury complained of, or if such failure proximately contributed to her injury in any degree, then the defendant would not be liable in this case and your verdict should be in favor of the defendant.

. . . . . . .

"On the other hand, the fact that the deceased, Mrs. Isler, may have · violated the city ordinance to the effect that pedestrians must cross the streets at street crossings, or at intersections, at right angles, would not, of itself, defeat a recovery in this case, because such violation, if any, must be shown to have been the proximate cause or proximately contributed to the injury, in order to defeat a recovery.

"The court further charges you, that the mere fact that an automobile killed a woman, or anybody else, for that matter, does not make the owner liable in damages, because the law makes liability in this class of cases depend upon whether or not the owner or driver of the automobile at the time failed to observe ordinary care, that is, such care as an ordinarily prudent automobile driver would be expected to observe under like circumstances, and whether or not the person injured was at the time observing ordinary care or such care as an ordinarily prudent person would be expected to observe under like circumstances.

"If she failed in this respect, and if such failure proximately contributed to the injury in any degree, the plaintiff · cannot recover, even though the defendant also failed to observe ordinary care."

The rule that proximate contributory negligence of the injured person will bar a recovery was so clearly and so frequently stated in the charge given to the jury in this case that the court did not err in refusing defendant's special requests on that subject. Atkins v. State, 119 Tenn., 458, 460, 105 S. W., 353. The eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenths assignments of error are overruled.

The remaining assignment (the seventeenth) is that the court erred in charging the jury as follows: "On the other hand, gentlemen, it was the duty of the deceased, Mrs. Isler, while crossing Argyle avenue at its intersection with Eighth avenue, south, to go straight across at right angles as near as practicable."

The defendant's criticism offered to the above quoted part of the charge, as stated in his brief, is that it "assumes that the deceased did cross Argyle at its intersection with Eighth avenue, south, whereas the defendant's proof showed that she did not cross at the intersection," and it was insisted that "her failure to cross

---

at the intersection was one of the elements of her contributory negligence which concurred at least in bringing about the collision."

The ordinance of the City of Nashville governing pedestrians when crossing streets reads as follows:

"1042, Pedestrians,—That pedestrians shall not step from the sidewalk to the roadbed without first looking to see what is approaching, and shall not needlessly interfere with the passage of vehicles or street cars. While the roadbeds of streets and highways are primarily intended for vehicles, pedestrians have the right to cross them in safety, and pedestrians in their turn must not cross the streets except at street crossings, and shall cross the street as nearly as possible at right angle, and not diagonally. This provision, however, shall not excuse the driver of any vehicle from constant vigilance to avoid injury to pedestrians, under all conditions or from his own carelessness."

It will be observed that the criticism of the charge made though the seventeenth assignment is limited to the following clause, viz: "While crossing Argyle avenue at its intersection with Eighth avenue, south." (The boldface is ours.) In strictness, the "intersection" of Argyle avenue with Eighth avenue, south, is a mere line, coinciding with the east marginal line of Eighth avenue, south; but it would be altogether unreasonable to assume that the trial court intended to be understood as saying, or that the jury understood him to mean, that Mrs. Isler was crossing Argyle avenue on the exact line of its intersection with Eighth avenue, south. Defining the word "at" in Webster's International Dictionary, it is said: "It has much the sense of to without its implication of motion, and is less definite than in, on, by etc. Thus, at the house, may be in or near the house."

In common parlance, the collision involved in this case occurred at the intersection of Argyle avenue and Eighth avenue, south, whether Mrs. Isler was on the "crossing," as contended by plaintiff, or several feet east of the crossing, as contended by defendant, and it was doubtless in this commonly accepted meaning of such phrases that the criticized phrase was used by the trial judge and understood by the jury. The seventeenth assignment of error is overruled.

This disposes of all the assignments of error. It results that the judgment of the circuit court is affirmed, and judgment will be entered here in favor of the plaintiff E. K. Isler, administrator, etc., and against the defendant N. W. Dennie, for $5000, with interest thereon from the date of the judgment below (May 18, 1927), and

for the costs accrued in the circuit court. The costs of the appeal will be adjudged against the defendant N. W. Dennie and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.