SAM LANDRUM et al., Plaintiff in Error v. CHARLES CALLAWAY, Administrator, etc., Defendant in Error.

Eastern Section. July 26, 1930.

Testerman & Burnett, of Knoxville, for Sam Landrum and Hines Taxi Co.

Donaldson & Montgomery, of Knoxville, for Larabee Flour Mills and G. T. Tinsley.

Smith, Carlock & Poore, of Knoxville, for defendant in error.

SENTER, J.   This is a suit by Charles Callaway, Administrator of the estate of Horace M. Callaway, against Sam Landrum, H. B. Hines and H. B. Hines Taxi Company; and G. T. Tinsley and Larabee Flour Mills Company.

The parties will be referred to as in the court below.  There are two sets of defendants, G. T. Tinsley and Larabee Flour Mills Co., as one set, and Sam Landrum, H. B. Hines, and Hines Taxi Co., as the other.

The plaintiff sued the defendants for the alleged wrongful and negligent acts and conduct of Sam Landrum, the driver of the taxi cab owned and operated by H. B. Hines, under the firm name of Hines Taxi Company; and also G. T. Tinsley as the driver of the automobile of Larabee Flour Mills Company, resulting in the death of plaintiff's intestate, Horace M. Callaway.  The jury returned a verdict in favor of plaintiff, and against all the defendants for the sum of $6,000.  From this judgment the two respective sets of defendants prayed and were granted appeals in the nature of a writ of error to this court, after the trial judge had denied the respective motions of the respective defendants for a new trial.  Errors have been assigned on behalf of Larabee Flour Mills Company, and G. T. Tinsley, appellees, and also by Sam Landrum and H. B. Hines, doing business as Hines Taxi Company.

The suit has resolved itself largely in a contest between the respective sets of defendants.

It appears that the defendant G. T. Tinsley, was driving the automobile of his employer the defendant Larabee Flour Mills Company, while engaged on the business of the Larabee Flour Mills Company, on Clark street in the City of Knoxville; that the defendant, Sam Landrum, was driving the Buick car of H. B. Hines, doing business as the Hines Taxi Company, on Oak street.

in the City of Knoxville, and a collision between the respective automobiles occurred near the center of the intersection of these two streets. Tinsley was driving a Chevrolet automobile, and Landrum was driving a Buick automobile. As a result of the collision the Chevrolet was thrown or ran onto the sidewalk where the deceased was then walking, with great force and violence, knocking down several panels of wire or iron fence and striking the deceased with great force, knocking him to the pavement and to the gutter, resulting in his death.

For convenience we will refer to the respective defendants as Landrum for the Hines Taxi Company, and Tinsley for the Larabee Flour Mills Company. We will first take up and dispose of the assignments of error filed on behalf of Landrum and the Hines Taxi Company.

By the first and second assignments of error of these appellants it is insisted that the accident resulting in the death of plaintiff's intestate was due solely to the negligence of defendant Tinsley in operating the Chevrolet automobile of his employer, Larabee Flour Mills Co., and that there was no evidence to support the verdict of the jury.

These two assignments cannot be sustained under the facts as disclosed by this record. Sam Landrum was driving the Buick car at a very high and dangerous rate of speed on Oak street, and according to the evidence of certain of the witnesses he did not slacken the speed of the car as he approached the street intersection, and that the car was running sixty miles per hour or more at the time it collided with the automobile driven by Tinsley. There being some evidence to support the verdict, and the verdict having been concurred in by the trial judge, this court is not called upon to weigh the evidence for the purpose of ascertaining the preponderance of the proof. These assignments are accordingly overruled.

The third assignment is directed to the action of the trial judge in refusing to give in charge to the jury special request No. 1, submitted by these two appellants. This special request No. 1, is as follows:

"It was the duty of the defendant, Tinsley, while driving the automobile to so operate it as to avoid an accident or collision with other vehicles upon the streets which might endanger or impair the life or property of others rightfully using said streets, and it was his duty to have made use of his senses and he is chargeable with seeing what he could have seen by the ordinary exercise of his sense of sight, and if before entering the intersection of Clark and Oak streets he saw

or could have seen the Buick sedan approaching at a high and dangerous rate of speed so that it would appear by the exercise of reasonable care and caution that a collision was probable if he entered said intersection and continued his course .across Oak street in front of said Buick sedan, then he, the said Tinsley, was guilty of negligence, and if that negligence proximately contributed to the accident resulting in the death of Horace M. Callaway, then he would be liable although the driver of the Buick sedan may have been also guilty of negligence and although the negligence of the driver of the Buick sedan may have been greater in degree.''

Under this assignment it is urged by Landrum & Hines Taxi Company that the trial judge erred in not giving the above quoted special request in charge to the jury, and in refusing to do so, on the theory that if Tinsley had exercised due care and caution in approaching and entering upon .the intersection of these streets the collision would not have occurred, and that this negligence upon the part of Tinsley, was the direct and proximate cause of the collision resulting in the death of Callaway.

It being further contended by Sam Landrum & Hines Taxi Company that this special request was not covered by the general charge. The general charge fully presented the question of negligence of the respective drivers of the respective automobiles. This special request was properly refused because it in effect states that even though Sam Landrum, the driver of the Buick car, was guilty of negligence in the operation of the automobile, and however great his negligence may have been, that if by the exercise of reasonable care Tinsley could have avoided the collision, that this would have absolved Landrum and the owner of the taxi cab from any liability for the death of plaintiff's intestate. This is not a sound statement of the law. If the drivers of the respective cars were both guilty of negligence, and the negligence of both resulted in the collision, then the negligence of both would have constituted the proximate cause of the collision resulting in the death of plaintiff's intestate. This assignment is accordingly overruled.

The fourth assignment presents the question that there was no evidence that this accident occurred within the corporate limits of the City of Knoxville, and that that portion of the charge referring to certain provisions of the city ordinances introduced at the trial constituted error. This assignment will be considered and disposed of in considering and disposing of a similar assignment made by Tinsley and the Larabee Flour Mills Company, as will also the fifth assignment, which complains of the action of the court in .

charging that the administrator was entitled to recover for the expenses of the funeral of plaintiff's intestate.

We come now to consider and dispose of the assignments of error filed on behalf of G. T. Tinsley and Larabee Flour Mills Company.

By the first assignment of these appellants it is said that the court erred in refusing to sustain the motion of these two defendants for a directed verdict in their favor at the conclusion of plaintiff's proof and renewed at the conclusion of all the evidence. Under this assignment it is said that there is no evidence to support a verdict in favor of plaintiff against these two defendants. These appellants admit that three witnesses testified to the effect that Tinsley was driving the Chevrolet automobile at a rapid rate of speed as it approached the intersection of Clark and Oak streets, and that he did not stop or slacken speed of the car until the collision occurred. It is true that one of these witnesses is Sam Landrum, the driver of the Buick car, and another was a negro man who evidently testified favorably to Landrum, the negro driver of the Buick car. But in addition to these two witnesses there was a lady who witnessed the accident, and she testified intelligently and frankly, and apparently fairly. She stated that Tinsley approached the street intersection on Clark street and did not slacken the speed of his car and that he was not running at a slow rate of speed as he approached the intersection of these streets, and that the collision occurred at and near the center of the intersection of Clark and Oak streets. She testified that she saw that there was going to be a collision between these two automobiles and that she ran to get out of the way, and that she also called to Callaway warning him of the danger. Tinsley admits that after he got into the street intersection he saw the Buick automobile approaching at a rapid rate of speed and that this was the first that he had seen of the Buick car, and that when he saw it he accelerated the speed of his car in an effort to pass in front of the Buick car and was struck by the Buick car, and his car was knocked from the point of the collision onto the sidewalk and ran up the sidewalk some distance before it struck the deceased. The physical facts would indicate that the cars sideswiped or came together about the same time. This constituted some evidence upon which the jury could find that Tinsley was negligent in the operation of the Chevrolet car, and that his negligence was one of the proximate causes of the collision. There being some evidence upon which to rest the verdict, and the verdict having been approved by the trial judge, it will not be disturbed on appeal.

By the second assignment these appellants complain of the action of the court in declining to permit the attorney for Tinsley and the milling company to ask leading questions addressed to Mrs. Jelks. Under this assignment of error it is said that the court refused to permit the attorney for these two defendants to cross-examine Mrs. Jelks, and to ask her certain leading questions. It being contended that she was a witness for the plaintiff, and that these defendants were entitled to ask her leading questions on cross-examination. The proposed leading questions to this witness were objected to by the other two defendants, and not by plaintiff. It was apparent that this witness, Mrs. Jelks, had testified favorably to these two defendants in her examination in chief by plaintiff's attorney. The learned trial judge did not permit the attorney for these two defendants to ask a purely leading question over the objection of the attorney for Landrum and the taxi company, on the ground that this was a witness favorable, apparently, to Tinsley, and the flour mill, and adverse to Landrum and the taxi company. However, it is clear from the record that the learned trial judge was exercising a sound and prudent discretion. It is also clear that the refusal of the learned trial judge to permit the leading questions was not prejudicial to these appellants. They got the full benefit of all the facts within her knowledge, and under chapter 132 of the Acts of 1911, this could not constitute reversible error. However, when this particular evidence is examined in connection with the balance of her testimony, we think that the trial judge was not in error. The scope of the cross-examination, or the right to ask leading questions on cross-examination is a matter more or less in the discretion of the trial judge under all the facts and circumstances. The rule is thus stated in 40 Cyc., 2427:

"Notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court, which may in criminal, as well as in civil cases, allow such questions to be put to a witness when he deems such course necessary or advisable, or refuse to allow such questions were the circumstances do not seem to require such mode of examination, and in the absence of a palpable abuse of discretion resulting in prejudice to the complaining party, reversible error cannot be predicated upon the ruling of the trial court as to allowing leading questions."

In Northern Pac. R. R. Co. v. Urlin, 158 U. S., 271, 39 L. Ed., 977, on this subject the court said:

"A court of errors will not take notice of an exception to leading questions except in a plain case of abuse of discretion."

In the case of Parmelee v. Austin, 20 Ill., 35, it was said:

"Circuit courts must be allowed the exercise of a large discretion on the subject of leading questions."

In the present case the attorney for Tinsley and the Flour Mills, in the course of the cross-examination of the witness, Mrs. Jelks, asked the witness: "Q. Now, as that Buick came west on Oak street there was something about it and its manner of procedure up Oak street that attracted your attention?"

Objection was made by attorney for Landrum and the taxi company on the ground that the question as asked was leading and suggestive. Whereupon, the court stated to the attorney for Tinsley, "Perhaps you can obviate that objection by reframing your question." The question was reframed and the witness was asked, "State whether or not there was anything about that Buick as it proceeded up Oak street there that attracted your attention." The attorney for the taxi company interposed the same objection, and this objection was overruled, and the witness answered, "Yes, sir," and was then asked, "What was it?" A. Well, I heard it coming and saw both of them coming together. Q. That is the Buick was coming up the street at an unusual rate of speed, wasn't it?" To this last question the attorney for Landrum and the taxi company again objected on the grounds of leading and suggestive, insofar as it affected his clients. Whereupon, the court addressed the attorney for Tinsley in these words:

"Mr. Montgomery, see if you can't avoid the objection," the attorney for Tinsley then asked, "State how that Buick was coming up that street Mrs. Jelks?" A. Well it was coming fast. Q. You saw it strike that Chevrolet, didn't you?" To this question the attorney for Landrum again interposed the same objection, and after some discussion between the court and the respective attorneys, the court requested authorities on the subject, and the cross-examination was suspended, but was later taken up. The court had stated that he would be glad if the questions could be so framed as to avoid the objection, stating that they did not want to have to try the case over. Later the court sustained the objections to the leading questions of this witness, but at the time stated that he would rule on each question of a similar character and with other witnesses. It appears that when Mr. Montgomery was not permitted to ask the leading question to this particular witness, he declined to cross-examine further. For the reasons above set forth we are of the opinion that the learned trial judge

fairly and properly exercised his judicial discretion in ruling on this particular evidence.

The third assignment by these appellants is as follows:

"The court erred in charging the jury as follows: 'If the defendant Tinsley violated any of said provisions of said city ordinance as averred in plaintiff's declaration then the defendant Tinsley was guilty of negligence, and if such negligence, if any, on the part of defendant Tinsley was the proximate cause of said Horace M. Callaway's injuries and death or proximately concurred with the defendant Landrum's negligence, if any, in producing said Horace M. Callaway's injuries and death, the defendant Tinsley is liable.'"

The only criticism which the appellants make to this part of the charge is that, there is no evidence that the accident occurred within the corporate limits of the City of Knoxville.

In support of this assignment of error appellants rely principally upon the case of Bristol v. Weaver, 146 Tenn., 511, wherein the court said:

"Though an ordinance requiring the installation of electric wires was offered in evidence without objection, an instruction on the effect of this ordinance was error, there being no evidence that the place where decedent was electrocuted was within the corporate limits of the city."

In that case there was no evidence or other facts that tended to show that the electrocution made the basis of that suit occurred within the limits of the City of Bristol. In the present case we not only have the ordinance introduced as evidence without objection, as was true in the case of Bristol v. Weaver, but we have the evidence of certain witnesses who we think clearly shows that this accident did occur within the corporate limits of the City of Knoxville so as to have the ordinances in question apply. Mrs. Jelks testified that she was standing at Mrs. Gatliff's gate under a magnolia tree at the time the accident occurred, at the intersection of Clark and Oak streets in the City of Knoxville. All the evidence is to the effect that the collision of these two automobiles occurred at the intersection of Clark and Oak streets. Ed. K. Mann, another witness, testified, that Mr. Callaway was killed at the intersection of Clark and Oak streets in the City of Knoxville, in April, 1929 (Tr., p. 155). James Waters, another witness, testified that he lives in Knoxville at 1007 Oak avenue; that he was born and raised there. His attention was called to a sketch of the location of the accident drawn on the floor in front of the jury showing the intersection of Clark and Oak streets. He stated that he was at home on the evening that the collision

occurred, heard the collision, and indicated from the plat on the floor his residence. This was on Oak street according to his indication, although he had referred to it as Oak avenue. He had stated that he lived in Knoxville on Oak avenue, meaning Oak street. This certainly constitutes some evidence that the place where the collision occurred was within the corporate limits of the City of Knoxville. There is certainly no evidence to the contrary. Where there is some evidence that the collision occurred in the City of Knoxville, and there being no evidence to the contrary, the court and jury were well warranted in the conclusion reached that the accident did occur in the City of Knoxville, and that the city ordinances regulating traffic on the streets in the City of Knoxville applied to the facts of this case. We find no error therefore under this assignment, and it is accordingly overruled, as is also the assignment of the other defendants on the same subject.

Assignments seven, eight, nine, ten, eleven and twelve are directed to the action of the court in refusing to give in charge special requests offered by these defendants, being Nos. 4, 5, 6, 7, 8 and 9. We have fully examined all these special requests tendered, and find that where they contain a proper statement of the law, they are fully covered by the general charge. The eleventh assignment is directed to the action of the court in refusing to charge that the plaintiff could not recover for the funeral expenses incurred by the administrator, and that such expense is not recoverable in the action for damages for the death of plaintiff's decedent, although sued for in the declaration. The twelfth assignment is directed to the action of the court in refusing to give in charge request No. 9, wherein the appellants sought to have the court charge that no recovery can be had for loss by the widow or children of the society and companionship of the father, and that monetary compensation is the only element of recovery allowed by law. We are of the opinion that under section 4029 of Shannon's Annotated Code, these items are proper elements to be considered under the rule of compensatory damages recoverable. This section reads as follows:

"Where a person's death is caused by the wrongful act, fault or omission of another, and suit is brought for damages as provided for by sections 4025 to 4027, inclusive, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose

use and benefit the right of action survives from the death consequent upon the injuries received.''

This section of the Code is taken from chapter 186 of the Acts of 1883. Prior to the passage of this Act the administrator of a deceased could only recover such damages as the deceased could have recovered if death had not resulted. However, the measure of damages recoverable by the administrator for the use and benefit of the widow and children of the deceased was broadened by the Act above quoted so as to authorize a recovery for all loss and damage sustained by the widow or children resulting from the death, and this, we think, would include the funeral expenses.

We have carefully examined all of the assignments of error made by both sets of appellants, and we have closely examined the record. We find no error, and all assignments of error are overruled, and the judgment of the lower court is affirmed. Judgment will be entered here for the amount of the judgment below with interest thereon, and the costs of the cause against all of the defendants as adjudged in the lower court, and in favor of plaintiff below. The cost of this appeal will be paid by the respective appellants and sureties on the respective appeal bonds.

Heiskell and Owen, JJ., concur.