# MUTUAL LIFE INS. CO. OF NEW YORK v. MOORE, No. 3.—171 S. W. (2d) 414.

Eastern Section. November 27, 1942.

Petition for Certiorari denied by Supreme Court, March 3, 1943.

Cates, Smith & Long and W. W. Piper, all of Knoxville, for plaintiff in error.

Susong, Parovin & Fraker, of Greeneville, for defendant in error.

McAMIS, J. This is an action to recover disability benefits under two policies of insurance issued to plaintiff by the defendant Mutual Life Insurance Company in the year 1928. The company paid benefits from 1936 until December 1940 when it declined to make further payments and the present suit was instituted in April 1941. The trial was before the court and a jury and there was a verdict and judgment for plaintiff for accrued benefits with interest and twenty-five percent penalty.

The trial court declined to grant defendant a new trial and it has appealed in error to this court, insisting that the court erred in submitting the case to the jury upon the substantive issue of liability and committed error in the admission of evidence. We consider first the insistence that there was no material evidence that plaintiff was totally and permanently disabled within the meaning of the policy and that the court erred in submitting that issue to the jury.

At the time of the trial, plaintiff was 47 years of age. According to plaintiff, in 1932, while he was engaged in the lumber business at Greeneville, Tennessee, he observed a change in his condition of health and consulted his physician, Dr. Brumley, but continued to work in Greeneville and in Virginia until 1936. While working

in Virginia he says he was frequently off from work because of illness and suffered with insomnia, severe pains around the heart, smothering, weakness, etc.

On January 1, 1936, plaintiff submitted to defendant a statement of disability setting forth as the medical diagnosis, "general nervous breakdown, tachycardia (meaning a fast heart) and murmur of the heart." After having plaintiff examined by its physician, defendant recognized liability and began making payments. On February 17, 1936, another statement of disability was submitted containing the same medical diagnosis. On April 28, 1937, the disability was ascribed to "hypertension, hypertrophy of heart, miocarditis." In a later claim dated August 25, 1938, the cause of disability was again changed to hypertrophy of heart, miocarditis and the same cause of disability was contained in the last statement dated August 24, 1939.

The proof shows that, in addition to the statements of disability mentioned, plaintiff was at intervals examined by physicians designated by defendant including Dr. Mathis of Greeneville and Dr. Harrison, a heart specialist of Nashville.

In December 1940 or January 1941, defendant sent an agent to Greeneville to interview plaintiff and advise him of the company's intention to discontinue payment of disability benefits. Plaintiff was asked to go to Nashville for another examination by Dr. Harrison but declined to do so, stating that he would submit to an examination by physicians of defendant's selection at Greeneville. In February 1941 plaintiff submitted to such an examination by three physicians employed by defendant.

When asked if defendant's agent demanded formal proof of a continuance of disability plaintiff at first stated that he did not remember having received such a demand and later positively stated that no such demand was made. It is admitted that no formal proof of disability was submitted after August 24, 1939.

■ Since we are required, in reviewing the case upon its appeal, to take that view of the evidence most favorable to plaintiff it is unnecessary to review all of the evidence here.[1] The greater portion of the evidence,

---

[1] Plaintiff testified to several instances since 1936 when he had attempted to engage in small tasks around his home, such as mowing the lawn, covering a lettuce bed, etc., and testified that in each instance he was compelled to discontinue physical exertion because of pain around the heart and shortness of breath. He is corroborated by numerous lay witnesses who say they were able to observe the effect of physical exertion upon his breathing.

Dr. Anderson testified that he treated plaintiff from August 10, 1937, to October 29, 1939; that he complained continuously of pain around the heart; that he found that he had a pulse rate of 120; and that he advised him to abstain from the use of coffee and tobacco and to rest. Dr. Anderson's diagnosis was chronic miocarditis. Dr. Anderson gave it as his opinion that physical labor would be detrimental to plaintiff's health but stated on cross-examination that, based upon his condition two years previously, plaintiff might engage in non-confining work.

Dr. Brumley, who appears to have been plaintiff's regular physician and began treating him in January, 1933, found that he had a rapid heartbeat running as high as 110, was weak and complained of pain in the region of the heart; that his blood pressure alternated from low to high, on occasions running to 160; that he at first thought his rapid heartbeat was functional rather than organic but later concluded from the fact that the rate did not return to normal as rapidly as it should after exercise, that plaintiff was suffering from organic heart trouble which he diagnosed as miocarditis, a disease or inflammation of the heart muscles. He says he treated plaintiff on the

both lay and medical, appears to have been designed to prove or disprove that plaintiff suffered from a heart disease of one kind or another. The ultimate question to be here determined is the propriety of the action of

average of about once every six weeks during the period of several years and treated him for the condition of his heart.

When asked to state what effect an attempt to do work, either mental or physical, would have upon plaintiff's condition of health, Dr. Brumley stated that: "I think it would be very dangerous for him to attempt to carry on any work either mental or physical."

The testimony of Dr. Dyer who had plaintiff as a patient from 1936 up to the time of the trial is substantially the same as that of Dr. Brumley. He testified that he found plaintiff's heartbeat range from 90 to 110, the normal rate being from 65 to 70, and that, in his opinion, the rapidity of the heartbeat was due to a diseased condition of the heart. According to Dr. Dyer where the circulatory system is involved rest is always recommended and it was his opinion that plaintiff should not engage in activities not recommended by a physician—that any physical or mental strain would aggravate plaintiff's condition of health and tend to shorten his life. Dr. Dyer, it appears, based his conclusion upon his observation of plaintiff over a period of years when he says he would see plaintiff oftener than once a month, particularly upon observations while plaintiff was under his treatment as a physician; that he noticed his shortness of breath in climbing the stairway to his office accompanied by extreme pallor which "occasioned quite a test to his circulatory system" and says plaintiff was manifestly suffering pain.

Dr. C. B. Laughlin testified that plaintiff had been his patient since 1939; that he had seen him have at least two attacks of angina and found that there had been an obstruction of the coronary arteries. He observed the "ashy" color, characteristic of heart disease, and that his condition was relieved by the administration of nitroglycerin, a recognized treatment for angina.

The foregoing is a summary of the medical testimony introduced in behalf of plaintiff. With the exception of Dr. Laughlin who has taken special training in cardiology, the physicians introduced by plaintiff are regular practitioners engaged in the general practice of medicine, including diseases of the heart. The competency of their

the trial court in submitting the issue of total and permanent disability to the jury.

█ We think it was for the jury to weigh the conflicting testimony set forth in the footnote. From the evidence reasonable minds might differ upon the question of whether or not plaintiff was totally and permanently disabled and we think the trial court was correct in overruling defendant's motion for a directed verdict.

It is insisted that plaintiff is not totally and permanently disabled because he is still able to go about, walk to town, and supervise the management of his farm. The question of what constitutes total disability has become well settled by numerous reported decisions of the Supreme Court and of this court, many of which are cited in the briefs, and we think it unnecessary to enter upon

---

testimony is not challenged but it is insisted in behalf of defendant that their testimony must give way to the testimony of cardiologists introduced by defendant who made examinations of plaintiff with electrocardiographs and testified that, while they found plaintiff suffering from a rapid heart, they did not attribute that condition to a diseased heart but rather to a nervous heart. We have read with interest the testimony of all of these specialists but shall not undertake to analyze their testimony in this opinion since we are of opinion that the testimony of plaintiff's regular physicians who observed him over a period of years and state that he is suffering from a disease of the heart which renders it dangerous for him to engage in any kind of work either physical or mental constitutes evidence sufficient to carry the case to the jury. We are unable to say that the testimony of specialists in a given field of medicine removes the case from the realm of factual debate with the result that nothing is left for determination by the jury. While such specialists possess special skill and facilities for making a diagnosis in their chosen field, in this case their opportunity to observe plaintiff was limited to one or two examinations of short duration while plaintiff's physicians observed him over a period of years, at times, when he was having an attack.

a discussion of the judicial meaning of the term. It is sufficient to say that, in this case, according to credible medical testimony plaintiff cannot engage in physical labor, nor can he engage in work involving mental strain, such as bookkeeping, without the danger of further impairment of his health.

■ Upon the question of the necessity of an insured working when he should not by reason of the condition of his health, the rule in this State is that if the work the insured must do to earn compensation impairs or endangers his health and ordinary care requires him to desist from such activities total disability exists. Temples v. Prudential Ins. Co., 18 Tenn. App. 506, 79 S. W. (2d) 608.

■ If plaintiff cannot engage in activities involving either physical or mental exertion it is difficult to imagine a character or type of work which he could do that would entitle him to compensation. The mere fact that he owns a farm, operated by tenants who appear to do all of the labor and the greater portion of the management, does not, we think, deprive plaintiff of the benefits though he directs what portions of the farm will be used for growing crops. See Pacific Mutual Life Ins. Co. v. Mc-Crary, 161 Tenn. 389, 32 S. W. (2d) 1052.

■ We think there was no error in the action of the court in permitting plaintiff to introduce proof of his condition of health between the date of the institution of suit and the date of trial in view of the court's ruling that such testimony could be looked to only as reflecting upon the permanency of plaintiff's alleged disability.

■ We think Dr. Laughlin's testimony that plaintiff was found to be suffering with angina after the date of the institution of suit was properly admitted, notwith-

standing plaintiff had not furnished any proof that he was suffering from that type of heart disease. According to plaintiff's testimony defendant made no demand for proof of disability after it ceased making payments in December 1940. The policy requires the furnishing of proof of a continuance of disability only in case such proof is demanded and where payments have been made and discontinued. We find nothing in the provisions of the policy requiring the insured to furnish additional proofs until demanded. In this case, according to plaintiff's testimony, defendant demanded no proof of a continuance of disability and had him examined by physicians of his own choosing. Under these circumstances, we do not think plaintiff was limited to a showing of the causes of disability contained in a statement furnished defendant in 1939 or before.

It is insisted that the court erred in permitting Drs. Dyer and Brumley to give their opinions as to the effect of plaintiff attempting to exert himself physically or mentally.

As held in Temples v. Prudential Ins. Co., supra, if plaintiff could not engage in activities, either mental or physical, without impairing or endangering his health he might be considered totally disabled within the meaning of the disability provisions of the policy. We think it was proper to give the jury the benefit of the opinion of the physicians upon this question. It was defendant's insistence throughout the trial that plaintiff could engage in light work and, under the authority cited, we think plaintiff was properly permitted to show that to engage in any work involving physical or mental exertion would result in further impairment of his health.

■ Complaint is made of the admission of testimony of lay witnesses undertaking to relate plaintiff's reaction to physical exertion, described as "getting his breath short," "had to stop and rest," "he couldn't go on; that his heart was bothering him or something or another," "checked up and got slow, acted like he was out of breath" (this expression was excluded by the court) "stopped and rested a little bit," "had to sit down on the steps and he was trembling and pale and he was smothering."

The trial court appears to have ruled that testimony of lay witnesses would be limited to what they actually saw and knew upon this subject but that any expressions made by plaintiff while exerting himself or experiencing pain would not be competent. We think this testimony, as limited by the trial court, is admissible against the objection that it is self-serving. As to such matters conclusions of lay witnesses are admitted when the expression of a conclusion of the witness is the only manner in which the evidence within the knowledge of the witness may be transmitted to the minds of the court and jury.

Testimony like that offered in this case has been admitted in numerous cases. In Chicago, etc., R. Co. v. Randolph, 199 Ill. 126, 65 N. E. 142, a lay witness was permitted to testify that a person appeared to be "suffering," "weak," "sore" and "in pain." In State v. David, 131 Mo. 380, 33 S. W. 28, evidence was admitted that a person had cramps and seemed in agony. In the more recent case of American National Ins. Co. v. Rosebrough, 207 Ala. 538, 93 So. 502, 503, evidence was admitted that the insured "move[d] around . . . sluggishly," etc., and in Critzer v. Donovan, 289 Pa. 381, 137 A. 665, that a person was "nervous." Other cases might be cited

almost without limit holding that corporal appearances of persons, such as that they looked sad, ill, intoxicated or scared are admitted in evidence.

After reviewing the cases of Pennington v. State, 136 Tenn. 533, 190 S. W. 546; Scott v. Union & Planters' Bank & Trust Co., 123 Tenn. 258, 130 S. W. 757; and Cumberland Telegraph & Telephone Co. v. Dooley, 110 Tenn. 104, 72 S. W. 457, our Supreme Court, speaking through Chief Justice Green, said in National Life & Accident Ins. Co. v. Follett, 168 Tenn. 647, 662, 80 S. W. (2d) 92, 98: ''We think there was no error in the action of the courts below in this particular. There is a class of opinion testimony from nonexperts that is admissible. In reality, such testimony describes observed facts in the only way in which they can be clearly described. When facts perceived by the senses are numerous and it is difficult to describe them in an adequate manner to the jury, and at the same time the conclusion or inference to be drawn from such facts is simple and well within the range of common experience and 'the witness can relate what he has seen more accurately, as well as more easily, by stating his conclusion than by attempting to detail the evidential facts,' the conclusion or inference is properly admitted.''

We are urged with much force and ability to reverse because of a ruling of the trial court that Dr. Laughlin might be cross-examined by counsel for plaintiff merely because he was placed upon the witness stand by defendant to identify certain cardiograms which he was unable to identify and was not used further as a witness for defendant. It is insisted that the mere placing of a witness upon the witness stand does not make him a witness for the party calling him to the stand. While we

are inclined to agree with the soundness of this contention we think this is a matter which should be left to the discretionary action of the trial court. State v. Lancaster, 202 N. C. 204, 162 S. E. 367; 3 Am. Jur. 535, Appeal and Error, Sec. 976; 5 C. J. S. 508, Appeal and Error, Sec. 1608; Carroll v. State, 11 Lea 480; Dennie v. Isler, 8 Tenn. App. 1; Landrum v. Callaway, 12 Tenn. App. 150.

 The assignment that the court erred in not directing the jury to return a verdict in favor of defendant as to the statutory penalty will be sustained. We find no evidence that defendant discontinued payments by reason of bad faith. Its physicians, after examining plaintiff, reached the conclusion that plaintiff was not totally disabled. We think defendant had a right to contest this issue without incurring liability for the penalty in view of the findings of competent physicians. A remittitur of the statutory penalty will, therefore, be suggested.

Otherwise, we find no error in the judgment below and it will be affirmed. Costs will be adjudged against plaintiff in error and surety.

Hale and Burnett, JJ., concur.