# FOSTER & CREIGHTON CO. v. HALE et al.—222 S. W. (2d) 222.

Eastern Section.  April 26, 1949.

Petition for Certiorari denied by Supreme Court, June 18, 1949.

C. G. Milligan, of Chattanooga, for plaintiff in error.

Harry Berke, of Chattanooga, for defendant in error.

HOWARD, J. These suits were filed against the Foster & Creighton Company, road contractors, by Alma Hale, Administratrix of the estate of James E. Hale, Jr., and Myrtle Crye, mother and beneficiary of Bonnie Douglas, to recover damages for the deaths of James E. Hale, Jr., and Bonnie Douglas, who were killed in a motorcycle accident on Rossville Avenue, in the City of Chattanooga, on the night of January 10, 1948. The parties will be referred to as they appeared in the trial court.

On the date of the accident, defendant was under a contract with the Highway Department of the State of Tennessee to widen and repave Rossville Avenue, one of the heavily traveled streets between the business section of Chattanooga and Rossville, Georgia. The contract required that one-half of the street be kept open at all times as a travelway for traffic. To warn the traveling public, the defendant placed along this street several large signs on which was painted "Danger, Road Under Construction, Travel At Your Own Risk." In addition to the signs, numerous "smudge pots" were used at night to warn the traveling public that the street was under construction.

Prior to the accident, the defendant had dug in the street several lateral trenches about four feet wide for the installation of drainage pipes to carry away surface water. These trenches were made by first breaking and removing the old pavement, after which the dirt was removed. After the drainage pipes were laid, the trenches were refilled with dirt and crushed rock.

On Rossville Avenue near Breneman's Restaurant, between Holtzclaw Avenue and Foust Street, one of these trenches had been dug by the defendant, and on the night of the accident the refilling of this trench had settled or had been compressed by heavy traffic, leaving a saucer shaped ditch or depression extending across that (east) side of the street used as a travelway by the public. On this night, at about 10:30 P.M., the deceased, James E. Hale, Jr., was riding his motorcycle northwardly on Rossville Avenue when it struck this ditch. At the time, he was carrying behind him as a passenger the deceased, Bonnie Douglas. Upon striking the ditch the machine veered out of control, bounded into the air and stopped on the pavement 75 to 100 feet away. Both Hale and

the girl received serious injuries when their heads struck the pavement, from which injuries they died.

The plaintiffs' declarations are substantially alike, each containing three counts.

The first count is based on common law negligence and charges specific acts of negligence as follows: (a) that the defendant failed to have the ditch properly filled; (b) allowed the ditch to get in a deep, unsafe and dangerous condition; (c) failed to have guards placed around the ditch; and (d) failed to have the ditch properly lighted.

In the second count plaintiffs rely upon Section 5, Ordinance 1329 of the City of Chattanooga which reads as follows: "Upon all obstructions or excavations caused by contractors or other persons in the streets and other thoroughfares they shall place red lights, to be kept burning from twilight in the evening until daylight in the morning, so long as such obstructions remain."

In the third count plaintiffs rely upon Section 1, Ordinance 2329 of the City of Chattanooga which provides: "All pits, excavations, fences, barriers, builder's equipment, bulding materials or rubbish in or upon a street shall have placed upon or by them, after dark, illuminated lamps with red globes, in such manner that there shall be one light at each end, and at intermediate point as may be necessary to afford proper warning."

To each of the declarations the defendant interposed pleas of not guilty and filed special pleas as follows: (a) that Hale was operating his motorcycle at a high, dangerous and reckless rate of speed and did not have it under proper control; (b) that he did not maintain a proper lookout ahead and drove the motorcycle in a place of obvious danger at such a rate of speed that he could not stop within the radius of his headlights; (c) that

each of the deceased was guilty of contributory negligence in failing to see the deep hole, if such existed.

At the conclusion of plaintiffs' evidence, and at the conclusion of all of the evidence, the defendant moved for directed verdicts in both cases, which were overruled by the Court, and after deliberation the jury returned verdicts in favor of the plaintiffs as follows: For Alma Hale, Admx., etc., $22,900; for Myrtle Crye, $20,500. These verdicts were approved by the trial judge and judgments were accordingly entered. Thereupon, defendant filed motions for a new trial in each case, which were denied, and the defendant has appealed to this court, assigning errors.

By the first assignment the defendant insists there was no substantial material evidence to support the verdict of the jury.

██ ██ Under an unbroken line of cases, this Court must accept the finding of the jury on issues of fact where there is any evidence to support that finding. We are required to disregard all countervailing evidence and to accept as true the strongest legitimate view of that evidence supporting the verdict, together with every reasonable inference to be drawn from the proof favorable to plaintiffs' insistence. Applying this rule we think there was ample evidence from which the jury could find that defendant was negligent in failing to maintain proper warning signs of the existence of the ditch or trench, and in permitting it to become dangerous because of continuous use by the public, ordinary care being the measure of duty required of the defendant.

Plaintiffs introduced numerous witnesses who testified that the trench ranged in depth from twelve to eighteen inches; that the dirt pressed out of the trench by traffic passing over it had formed a hard layer on the north side

of the trench from four to six inches high, making it more difficult for vehicles to cross. Eighteen witnesses testified that no lights or barricades were placed around the trench to warn drivers and the public of its existence. While there were approximately 150 "smudge pots" located at intervals along the construction project, only one had been placed at or near the trench, and it was put on the edge of the street at the east end of the trench. On the question of whether or not the trench could be seen with the aid of headlights, thirteen witnesses, including police officers in patrol cars, testified they kept a lookout ahead, that they were operating their motor vehicles at a reasonable rate of speed, and that they all hit the trench or were almost in it before they saw it. There is no direct proof in the record that the deceased was speeding. Peggy Long, one of the defendant's eyewitnesses to the accident, testified that the motorcycle was going slow, and Albert Hollingsworth, another eyewitness who was traveling about fifty feet behind the deceased, testified that the motorcycle was going from twenty to twenty-five miles an hour. This witness testified that several other motorcycle riders crossed the trench several minutes ahead of the deceased without much difficulty because of a traffic jam. He said that the riders of these motorcycles slowed down and crossed the trench by keeping both feet on the ground as their motorcycles eased into the trench.

Defendant further contends that it had no notice of the existence of the defect in the street; that the watchman who drove over the construction project at frequent intervals did not discover the defect. Defendant introduced several witnesses who testified that the trench was dug on Friday and was refilled on Saturday afternoon previous to the accident. The testimony of these witnesses

was supported by the records of the State Engineer's Office. On the other hand, the plaintiffs introduced several witnesses who testified that the dangerous condition of the trench had existed two or three days prior to the accident. Three of these witnesses testified that they were slightly injured while crossing this trench in their cars on Friday before the accident, and one of defendant's witnesses, L. D. Breneman, testified that a city bus got stuck in the trench on Friday before the accident and that one of defendant's bulldozers was used to push the bus out. Whether defendant had actual or constructive notice was a controverted question, and the jury having found this issue in favor of plaintiffs, we are bound by the jury's findings. Also, the issue of whether the defendant was negligent in failing to have the trench barricaded and the place properly lighted was a question for the jury.

■ ■ We think that the defendant was under a legal duty to warn the traveling public of dangerous pitfalls appearing in that part of the street in use, and a failure to do so was negligence for which the defendant would be liable. Furthermore, the drivers of motor vehicles had a right to assume that the travelway open and in use was reasonably safe and free from pitfalls.

■ Where work is being done on a highway, due care must be taken to avoid injury to travelers, and a contractor creating a hazard therein is under a duty to place suitable barricades or warning signs, and in the night time, to properly place lights, to warn the traveling public of the hazard. McHarge v. Newcomer, 117 Tenn. 595, 100 S. W. 700, 9 L. R. A., N. S., 298; Finchem v. Oman, 18 Tenn. App. 40, 72 S. W (2d) 564; City of Knoxville v. Baker, 25 Tenn. App. 36, 150 S. W. (2d) 224; 25 Am. Jur.

Sec. 412, page 706; 40 C. J. S., Highways, Secs. 256, 257, 262.

In Finchem v. Oman, supra, Judge Faw of this Court said [18 Tenn. App. 40, 72 S. W. (2d) 567]: "The embankment or fill on and across a portion of the highway at the point in question was not a nuisance, as alleged in the first count of plaintiff's declaration, for defendant, had a lawful right to erect the fill in the process of the construction or reconstruction of the highway, under his contract with the state highway department; but reasonable men could not differ about the fact that the fill disclosed by the proof constituted an obstruction of the customary use of the highway. The defendant, therefore, owed to travelers on the highway the duty of using proper precautionary means to warn them of the presence of the obstruction. The proof was conflicting with respect to the degree of the danger to be reasonably anticipated from the presence of the fill in the highway, and also as to whether defendant did or did not display a 'red light' on the fill as a warning signal."

■■ It is further insisted on behalf of defendant that plaintiffs' intestates were guilty of contributory negligence in that the motorcycle was being driven at the time of the accident at such an excessive rate of speed that the rider could not stop the motorcycle within the distance of the rays of his lights. In support of this theory, the defendant relies upon the law declared by our Supreme Court in West Construction Company v. White, 130 Tenn. 520, 172 S. W. 301. As previously pointed out there was no direct evidence that the deceased was driving his motorcycle at an excessively high rate of speed. While the principle declared in the West Construction Company case has been frequently followed, we think the instant case is unlike that case in many respects. In the

West Construction Company case the obstruction (mixer) was described as being from four to six feet wide, twelve feet long and nine feet high, and was an object which could be seen by an approaching automobile several feet away. In the instant case the defect was a depression in the pavement which could not be seen by the driver until the motor vehicle was in or near it. Besides, in the West Construction Company case the driver of the automobile had driven over the street previous to the accident while in the present case there is no evidence that either the driver of the motorcycle or his guest had ridden over or had knowledge of the defect. In cases where facts are in dispute the issues of negligence and contributory negligence are questions for the jury. Tubb v. Boyd, 13 Tenn. App. 432; Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294; Patillo v. Gambill, 22 Tenn. App. 485, 124 S. W. (2d) 272; McBroom v. S. E. Greyhound Lines, 29 Tenn. App. 651, 199 S. W. (2d) 931. Likewise, questions of ordinary care and proximate cause of an injury are jury questions. Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S. W. (2d) 512, 127 A. L. R. 1378; Campbell v. Campbell, 29 Tenn. App. 651, 199 S. W. (2d) 931; Fields v. Gordon, Tenn. App., 203 S. W. (2d) 934. Plaintiff having introduced numerous witnesses who testified that the trench could not be seen with the aid of automobile headlights until the driver was within close proximity of it, we think that the question of contributory negligence was properly submitted to the jury. Moreover, the defendant failed to introduce any direct testimony of this question.

■■ Assignment is directed to the action of the trial judge in excluding the testimony of Sam Bright, an alleged motorcycle expert, offered as a witness for the defendant. The testimony was objected to by plaintiffs

and the court sustained the objection. The defendant endeavored to establish by this witness the rate of speed of the motorcycle at the time of the accident by asking a hypothetical question. Bright testified that he had been in the motorcycle business for 31 years, selling and repairing different makes of machines; that he handled and sold the type of machine owned and ridden by Hale on the night of the accident. This witness did not see the trench where the accident occurred, did not know the condition of the trench or the approaches thereto, did not know how or at what angle the motorcycle entered the trench, did not know whether the brakes were applied, and after passing over the trench did not know whether the machine landed on its side or wheels. In the light of circumstances, we find no error in the action of the trial judge. The qualification of a witness as an expert is a matter largely within the discretion of the trial court whose ruling in respect thereto will not be reversed upon appeal unless clearly erroneous and unless there was an abuse of discretion. McElroy v. State, 146 Tenn. 442, 243 S. W. 883; Keys v. Keys, 23 Tenn. App. 188, 129 S. W. (2d) 1103.

Finally, it is insisted that the verdicts of the jury are excessive; that they are so excessive as to show passion, prejudice and caprice on the part of the jury.

On the date of his death, James E. Hale, Jr., was 25 years of age, was in perfect health and was earning $170 per month. According to the mortality tables, he had a life expectancy of approximately 38 years with a potential earning capacity of $77,000. At the time of her death, Bonnie Douglas was 18 years of age, in good health and was earning $120 per month, excluding overtime. According to the mortality tables, she had a life expectancy of

approximately 42 years with a potential earning power of over $60,000.

Admittedly, the judgments herein are larger than usual in death cases, but considering the whole record and the facts in the light of present economic conditions, we do not think that the amounts are excessive. In approving a judgment for $18,000.00 in a personal injury case the middle division of this court, in Waller v. Skeleton, Tenn. App. 212 S. W. (2d) 690, 698 said: "The inflation, the high cost of living, and the impaired purchasing power of money are proper considerations by a jury in fixing the amount of damages, by the trial court in determining whether the amount of the verdict is excessive and whether he should approve it, and by the appellate courts in reviewing the question of excessiveness or inadequacy of verdicts. This is true because compensation means compensation in value, and the value of money lies only in what it will buy. Power Packing Co. v. Borum, 8 Tenn. App. 162, 182; 15 Am. Jur., Damages, Sec. 71, p. 481, also Sec. 204, p. 621."

In Spivey v. St. Thomas Hospital, Tenn. App., 211 S. W. (2d) 450, 458, a patient delirious from high fever was fatally injured when he fell from a window of a hospital room where he had been left unattended by hospital authorities. In affirming a judgment for $20,000 in this case Judge Felts of the middle division of this court said: "Defendant complains of the amount of the verdict. Among other thing it is urged that, without the accident, Spivey might later have died of pneumonia. The jury might well have considered that it was more probable that he would recover. He was 26 years of age and had previously enjoyed good health. The jury were properly instructed to consider his condition of health and all other relevant factors. It was for the jury to balance

all the probabilites in forming an estimate of the damages. This is much the same thing the jury has to do in any action for damages for wrongful death. The uncertainties inherent in such a process are no objection to allowing such damages as seem a fair equivalent of the economic loss which resulted to plaintiff and her child from the death sued for. Provident L. & A. Ins. Co. v. Globe Ind. Co., 156 Tenn. 571, 576, 3 S. W. (2d) 1057; Tallent v. Fox, 24 Tenn. App. 96, 118, 119, 141 S. W. (2d) 485. We cannot say that the amount allowed was too much.''

In Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848, 853, Judge Burnett, speaking for the eastern division of this court, stated the law which we think applicable here:

'' 'The complaint in the case at bar is not that the verdict was corrupt either actually or inferentially, but that it was so large as to indicate that it was influenced by passion, prejudice or caprice; in other words, not that it was a dishonest verdict, but that it was an excessive verdict.

'' 'The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence'. [Reeves v. Catignani] 157 Tenn. page 176, 7 S. W. (2d) page 39.

''The author of American Jurisprudence in Volume 15 thereof at page 622 has stated the rule as follows:

'' 'Moreover, the question of the excessiveness of a verdict is generally one for the determination of the trial court in the first instance, and its action in granting or refusing to grant a new trial on that ground will not be disturbed on appeal unless an abuse of discretion is shown.'

"Verdicts rendered by juries are in no wise uniform. We have never formulated any mathematical rules of computation in negligence cases upon which we can make these verdicts and judgments uniform. In compensation cases we do have a uniform schedule by statute upon which different types of injuries are uniformly compensated. Liability under compensation statutes is entirely different from liability in a negligence case. We should not use this table as a guide. If the legislature in its wisdom desires to establish such a uniform schedule in negligence cases it is up to them and not the judiciary. It is our duty to take into consideration the nature and extent of the injury, the suffering, expenses, diminution of earning capacity, age, expectancy of life and amount awarded in other similar cases in our decision of this question." See also Atlantic Coast Line RR v. Meeks, Tenn. App. 208 S. W. (2d) 355.

We have carefully read the entire record with attention to the assignments of error, and finding no error in the trial below all assignments are overruled and the judgments will be affirmed at defendant's costs.