# W. CONDON GRAHAM v. THELMA SMITH. —330 S. W. (2d) 573.

Eastern Section. September 3, 1959.

Certiorari Denied by Supreme Court December 11, 1959.

550

Brock & Odom, Chattanooga, for plaintiff in error.

Harry Berke, Chattanooga, for defendant in error.

McAMIS, P. J. This is an action for seduction instituted by Mrs. Thelma Smith, mother of Wanda Smith, a minor, under T. C. A. sec. 20-107, providing in part as follows:

> "* * * A father, or, in case of his death or desertion of his family, the mother, may bring suit for the seduction of a daughter, although such daughter be not living with or in the service of the plaintiff, and though there be no loss of service. * * *"

Judgment by default was rendered against the defendant W. Condon Graham and a jury impaneled to assess the damages returned a verdict for $20,000 for which amount judgment was rendered. Defendant's motion for a new trial was overruled and he has appealed, in-

sisting as the principal grounds for reversal (1) that, in view of the (alleged) bad character of the plaintiff and her daughter before the alleged seduction, only nominal damages should have been allowed, (2) the Court erroneously refused to allow in evidence certain recordings said to contain admissions made by Wanda Smith favorable to defendant, (3) the charge of the Court that the jury might consider as aggravating the damages unsubstantiated references to alleged misconduct of plaintiff and her daughter made during their cross examinations, (4) excessiveness of the verdict and (5) refusal of the Court to declare a mistrial for reasons which will be hereinafter detailed.

■ Reed v. Williams, 37 Tenn. 580, holds that in an action for seduction the character and reputation, both of the parent suing and of the daughter, may be put in issue and, if bad, go in mitigation of damages. Under this authority the Court permitted a full development of defendant's insistence that both the plaintiff and the daughter were persons of bad reputation and character prior to the alleged seduction.

■ In December, 1956, when the association between Wanda Smith and the defendant began she was 16 years of age. The defendant was 38 years of age. Although there is considerable evidence to the contrary, both the daughter and her mother testified that Wanda had never associated with men. Mrs. Smith testified that she was timid and shy. Wanda testified that she was a virgin.

Prior to 1956, Mrs. Smith obtained a divorce from her husband, the father of Wanda, another daughter and a younger son. For several years she had supported these children by working as a seamstress and as a waitress.

In December, 1956, Wanda had gone to live with her married sister whose husband was in the armed services. There she met the defendant, a man of apparent wealth who operated a gambling house and lived in Dayton, Tennessee. Defendant took her to a Christmas Eve party which lasted until 4 A.M. and then to his home in Dayton where the first act of intercourse occurred. Wanda testified this act and subsequent acts of intercourse over a period of months were induced by defendant's promise of marriage. During this period defendant would take her to his gambling house and then to his home in Dayton where she assisted him in counting large sums of cash, on one occasion as much as $11,000.

When the married sister moved defendant insisted that Wanda remain in the apartment at his expense. Plaintiff testified she was unable to persuade her daughter to leave the apartment and come back to her home. She testified that she accompanied her daughter on one occasion to defendant's gambling house but only because she feared the daughter would get into trouble; that she never at any time promoted or approved her daughter's association with defendant; that her daughter told her she was in love with defendant and that they were going to be married.

Defendant was indicted in the Federal Court at Chattanooga following a visit made by Wanda Smith to the office of the attorney general of Hamilton County where she related her association with defendant and his alleged misconduct toward her. After defendant was indicted Wanda's picture appeared in a Chattanooga newspaper with the statement that she was defendant's girl friend. As a result both the mother and daughter say they were caused great humiliation and shame. Because of this

publicity the mother was discharged from her employment as a waitress and forced to engage in less remunerative employment as a seamstress. To escape the notoriety of her association with defendant, the daughter moved to another town and obtained employment as a receptionist in a radio station but when her association with defendant became known she was forced to quit.

During the cross examination of plaintiff she was closely questioned about alleged acts of misconduct with men and asked if such misconduct was not the real cause of her discharge as a waitress. She denied all such misconduct or attempted to explain all appearances of misconduct. A number of witness testified, however, that her reputation was bad prior to December, 1956. There is no such general proof of bad character and reputation of Wanda Smith prior to that date. At least, a jury might find that as to Wanda the presumption of good character prior to that time had not been overcome. She too was subjected to rigid cross examination as to prior acts of grave misconduct, all of which she positively denied.

██ Under the foregoing proof, we can not agree that the recovery should have been limited to nominal damages.

Bearing in mind that it was within the competence of the jury and trial court both to award punitive damages and to fix the amount of actual damages both to the plaintiff and to the daughter, can it be said that the verdict of the jury is so excessive as to warrant this Court in fixing a smaller amount by way of remittitur?

In the first place, we can not know what amount the jury fixed as punitive damages and consequently can not

know what amount was arrived at as actual damages. Nor are we permitted to know how much the jury considered a proper award for aggravation of damages for the innuendoes and insinuations cast upon both the plaintiff and the daughter during cross examination and which the jury may have concluded were unwarranted. How much is a proper award for the spoliation of the chastity of a sixteen year old girl?

Can we, having never seen this young girl, arrive at an amount more just and proper than the Court and jury who saw and observed her during the lengthy trial and as a result must have formed some opinion of her personality and moral character?

█ Our cases consistently hold that in cases involving unliquidated damages, incapable of mathematical measurement, the amount fixed by the jury, concurred in by the trial court, will not be disturbed on appeal except on a showing of an abuse of discretion and that the amount is so large as to shock the judicial conscience. Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848; Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222; Management Services, Inc. v. Hellman, 40 Tenn. App. 127, 289 S. W. (2d) 711.

In seduction cases, because of the peculiar nature of the action and the various elements of damage both to the seduced female and to her parents, and, as expressed by some courts, a desire to avoid smoothing the way of seducers; appellate courts have generally shown great reluctance to interfere with the amount awarded by the jury. Largely on these grounds, verdicts have been sustained ranging up to $35,000. 47 Am. Jur. 676; Annotation 36 A. L. R. (2d) 560.

 It is true Mrs. Smith offered no character witness to sustain her good character and reputation and to refute defendant's evidence that her reputation prior to the seduction was bad. This, however, only goes in mitigation of damages. We must assume that the jury found that defendant failed to impeach the character and reputation of the daughter and also found that the insinuations cast upon plaintiff and the daughter during cross examination were not warranted. Assuming that the jury mitigated the damages because of the proof impeaching the character of the mother, we still can not say, under all the proof, that the verdict is excessive.

 There was no error in the charge of the court allowing the jury to consider as aggravating the damages imputations of unchastity in cross examining the plaintiff and her daughter, if the jury found them untrue. Ferguson v. Moore, 98 Tenn. 342, 348, 39 S. W. 341.

 It is next insisted the Court erred in not declaring a mistrial when the daughter referred to her pregnancy by defendant and, later in her direct examination, made reference to the defendant having given her a narcotic. Neither of the statements was made in response to a question by plaintiff's counsel and, upon objection being made that they were outside the averments of the declaration, the jury was promptly admonished not to consider them as evidence. It is not apparent that the injection of these remarks was intentional and we think it was a matter resting within the sound discretion of the trial court to refuse a mistrial and admonish the jury to disregard these statements. We find no abuse of discretion.

 It is earnestly insisted the Court erred in excluding certain recordings said to contain admissions and

statements made by plaintiff and her daughter contradicting their testimony in this case. In excluding these recordings the Court said:

"The credibility of a witness may also be impeached by proof that he or she has made statement out of Court contrary to what he or she has testified at the trial. But it is only in matters relating to the issues that the witness can be thus contradicted. The witness must first be asked whether he or she made such statements giving as near as possible the time, place and person to whom the statements were made. It isn't enough to ask her the general question whether she has ever said so and so. The Court has excluded tape recordings made on or about January the 8th and I believe possibly some in the latter part of December of 1957 and January 8th, 1958 because said recordings are not relevant to assist the jury in assessing the damages in this case and were recorded one year after the date of the seduction. And the time, place and person to whom they were made were not established fully in the opinion of the Court. To all of this finding, the defendant has noted their exceptions."

It is thus apparent that the alleged admissions and contradictory statements were not excluded because they were in the form of recordings but upon the ground, among others, that the matter contained in them was on immaterial or extraneous issues and, therefore, could not properly be considered as impeaching evidence.

We infer from the record that the Court so ruled after examining a transcript of the alleged statements. No such transcript appears in the record before us; nor does

the content of the recordings otherwise appear. The ruling of the Court must .be presumed correct until the contrary appears and we can not say under the record that the Court erred in excluding the recordings.

We find without merit defendant's insistence that a mistrial should have been granted because plaintiff's counsel referred in his argument to the contents of the recordings above mentioned. The record shows that counsel referred to the fact that defendant had seen fit to hire certain persons to make the recordings—not to their contents.

We find no error and it results that all assignments are overruled and the judgment affirmed. Costs of appeal will be taxed to defendant and surety on the appeal bond.

Hale and Howard, JJ., concur.