## JOHNSON FREIGHT LINES, INC., et al. v. MARGARET A. TALLENT.

## JOHNSON FREIGHT LINES, INC., et al. v. MRS. GROVER SMITH.—384 S. W. (2d) 46.

Eastern Section. February 21, 1964.

Certiorari Denied by Supreme Court March 31, 1964.

Campbell & Campbell and Jess Parks, Chattanooga, for plaintiff in error, Johnson Freight Lines, et al.

Spears, Moore, Rebman & Williams, Chattanooga, for defendant in error Mrs. Grover Smith.

Maurice M. Weaver, Chattanooga, for defendant in error Margaret A. Tallent.

McAMIS, P.J. These two suits, tried together below, grew out of a three-vehicle collision which occurred in Hamilton County July 29, 1961. The jury returned verdicts in favor of Mrs. Smith and Mrs. Tallent in the respective amounts of $7,500.00 and $5,000.00 against Johnson Freight Lines, Inc., and Don Keener, the driver of its truck. Judgments were entered on the verdicts from which the Freight Lines and Keener have appealed.

Since no question is made on the issue of negligence it will suffice to state with respect to the accident that the Smith car was struck from the rear by the truck and knocked forward into the Tallent car driven by the husband of plaintiff, Margaret A. Tallent. As a result, Mrs. Tallent was thrown about in the car but apparently sustained no visible physical injuries. In her case, which will be first considered, the declaration avers that as a result of the accident and being thrown about in the car Mrs. Tallent suffered a recurrence of a previous emotional upset from which she had recovered and had suffered a change of personality.

Mrs. Tallent did not testify. If a case was made out in her case it is upon the testimony of lay witnesses as to the behavior of Mrs. Tallent prior to psychiatric treatment in 1958 and 1959, her apparent recovery before the

accident, lay testimony as to her mental condition following the accident and upon answers of Dr. Sottong, a psychiatrist, and Dr. Wood a general practitioner of medicine, to certain hypothetical questions.

Mrs. Tallent's husband and two of her sisters testified that she had an emotional upset or nervous breakdown in 1958 for which she was given psychiatric treatment and the electric shock and insulin treatment in a Nashville hospital; that prior to these treatments she had developed hostility toward certain members of her family as well as close personal friends, discontinued social and civic contacts and responsibilities and seemed to wish to be alone and live in a state of withdrawal, but that after taking these treatments for several months her mental condition changed so that she resumed normal relations with friends and relatives and attendance at P.T.A. and church meetings in the same way as before the onset of her illness in 1958.

Mr. Tallent testified that his wife became emotionally upset at the scene of the accident and that he induced her to leave and go home, that thereafter her old symptoms recurred and that she became, in his opinion, of unsound mind. There is other testimony in the record to the same effect and none to the contrary.

Defendant insists the court erred in allowing Doctors Sottong and Wood to testify on the basis of hypothetical questions which were allegedly based upon hearsay opinions and conclusions of lay witnesses as to the state of mind of Mrs. Tallent and, particularly, that it was error to overrule defendant's objection to the following hypothetical question:

"Assuming, Doctor, that a forty-year old woman had

been in normal physical and mental health prior to May of 1958; had over the years worked at public works, for T.V.A., public schools, as a drug clerk; had worked in her home as a housewife; and who had no previous history of mental or emotional disturbance; suddenly began first to be nervous, apprehensive and agitated, and then after that progressed to the place that she imagined persecution, that people were talking about her; depressed so that she cried, and so that she withdrew from all her normal activities, such as Parent-Teachers, church, school activities; would stay at home in bed with a complaint of backache for days, and even a week at a time; and that this woman was treated with electric shock treatments for two weeks in 1958, and thereafter was hospitalized from December 28, 1958 to March 10, 1959, receiving insulin and electric shock treatments; and that this forty-year old woman then was placed on stelazine, seeing the doctor monthly, a neuro-psychiatrist; and that from March until July 29, 1961 that she had ceased to have delusions, that she was again going to meetings, participating in community activities, and engaging in what would generally have been her normal behavior and conduct before the onset of the incident in 1958, and that on July 29, 1961 she was at night involved in an accident wherein the car in which she was riding was struck from the rear twice with such force that she was thrown forward into the windshield, and thrown about inside the car. The seat was knocked forward in the car. The children—her two children in the back seat were thrown about in the car, and that she became nervous that night, and the next day began again to show the symptoms that I outline as having originated in 1958. The sense of apprehension, a sense of fear of

people, a sense of people spying on her, a distrust of her sisters, mother and father and husband; and that she developed a further delusional idea that the government controlled all the world, that we didn't even own property, and that we were under the domination of the master government. That she withdrew again, and would stay in bed for long periods of time. Would you, Doctor, or not say that this recurrence or incidence that I have described last could have resulted from the accident of July 29, 1961?''

It is also insisted for the same reason that the Court erred in accepting Dr. Sottong's affirmative answer as to his opinion of the cause of Mrs. Tallent's relapse. The same insistence is made with respect to a substantially similar, if not identical, question propounded to Dr. Wood and his affirmative answer thereto.

As we read the assignments and brief it is not insisted that objection was made to the lay testimony above summarized and such objections erroneously overruled or that such evidence was improperly admitted. The insistence is that this evidence was improperly used to lay the basis for the hypothetical questions propounded to Dr. Sottong and Dr. Wood as expert witnesses and that their answers thereto should have been excluded.

In support of this insistence strong reliance is placed upon Gulf Refining Company v. Frazier, 19 Tenn.App. 76, 83 S.W.(2d) 285, where the rule was laid down that a physician whose examination was made solely for the purpose of being able to testify as an expert witness in behalf of the person examined and not in the regular course of professional treatment will not be permitted to testify as to conclusions reached from such examination.

This rule was reiterated in Lemarr v. Metropolitan Life Ins. Co., 24 Tenn.App. 294, 143 S.W.(2d) 891, where reference was made to a previous opinion in Gulf Refining Company v. Frazier reported at 15 Tenn.App. 662 and the reason for the rule stated as follows:

"The reason for this ruling is that such testimony is open to the suspicion of symptoms having been manufactured or feigned by the patient for the purpose of influencing the opinion of the examining physician and we think the same reasoning applies to the testimony of a physician employed to investigate the mental soundness or unsoundness of a patient for the purpose of testifying for him as a witness."

Defendant's brief also quotes at length from annotations at 66 A.L.R. 1087 and 98 A.L.R. 1110, 1111, including the following:

"In a will case to determine the sanity of the testator, testimony obtained upon a hypothetical question propounded to expert witnesses and containing conclusions, opinions, and inferences of preceding witnesses, including plaintiff's is properly excluded. Coughlin v. Cuddy (1916) 128 Md. [76], 96 A. 869."

We have no doubt as to the soundness of this holding. In this case, however, the hypothetical questions and the answers thereto were not based upon conclusions of the witnesses from their observance of Mrs. Tallent's behavior and activities but upon irrational conduct and beliefs related by the witnesses.

Another principle seems to us involved here. In National Life & Accident Ins. Co. v. Follett, 168 Tenn. 647, 80 S.W.(2d) 92, 98, Mr. Chief Justice Green said:

"There is a class of opinion testimony from nonexperts that is admissible. In reality, such testimony describes observed facts in the only way in which they can be clearly described. When facts perceived by the senses are numerous and it is difficult to describe them in an adequate manner to the jury, and at the same time the conclusion or inference to be drawn from such facts is simple and well within the range of common experience and 'the witness can relate what he has seen more accurately as well as more easily, by stating his conclusion than by attempting to detail the evidential facts,' the conclusion or inference is properly admitted." See to the same effect Mutual Life Ins. Co. of New York v. Moore, 26 Tenn.App. 297, 307, 171 S.W.(2d) 414.

■ Under these holdings it was proper to show by lay witnesses that Mrs. Tallent appeared to be upset, hostile and to withdraw from social contacts.

■ If so and, contrary to what has been said, the testimony of Dr. Sottong and Dr. Wood was improperly admitted, there is still competent evidence sustaining a finding that Mrs. Tallent had recovered from her original emotional upset when the accident occurred and immediately suffered a relapse. From this sequence the jury might conclude that the relapse was proximately caused by defendants' negligence. Since there was no dispute as to these facts, even if the expert testimony should have been excluded, no prejudice is shown and, therefore, reversible error has not been established. Sec. 27-117 T.C.A.

It is also insisted that, since Mrs. Tallent sustained no apparent physical injury, she can not recover for the alleged mental condition above discussed. No authority

is cited in support of this insistence and we believe none can be found. This case does not fall within that line of cases holding that no recovery can be allowed for fright alone, typified by Nuckles v. Tenn. Elec. Power Co., 155 Tenn. 611, 612, 299 S.W. 775. The case is more like Memphis St. Ry. Co. v. Bernstein, 137 Tenn. 637, 194 S.W. 902, where Mr. Justice Green said:

"If the mental emotion occasioned by the negligence clearly produced the physical suffering, then the latter is in direct line of causation from the wrongful act of the defendant. While it may be somewhat more difficult in such a case to show the connection between the cause and effect, nevertheless, if the proof is satisfactory, we think a recovery should be allowed. * * *

"In the cases before us Mrs. Bernstein suffered physical violence immediately producing injuries. Mrs. Kantrovitz sustained no such violence. Both plaintiffs were doubtless badly frightened, and there is evidence to the effect that this fright occasioned bodily pain to both thereafter.

"For the bodily pain and suffering produced by such fright and thereby proximately resulting from the accident, a recovery was permissible. For fright alone the plaintiffs below were not entitled to recover, and the charge which authorized a computation of damages based upon fright alone was erroneous and in derogation of the rights of the plaintiffs in error."

■ We can not follow defendant's insistence that, because there were no marks on Mrs. Tallent's body, no recovery can be allowed for her alleged relapse into a state of emotional disturbance or insanity. If it can be said that this mental state must have been accompanied

by a physical impact, this requirement is met by proof that she was thrown about in the car by the sudden and unexpected blow from the rear.

What has been said in the Tallent case is responsive to defendants' insistence that the verdict in Mrs. Smith's case was larger than it would have been except for the above detailed expert testimony. In any view of that evidence, we can not see how it could have affected the amount of the verdict in Mrs. Smith's case.

It is also insisted the verdict for Mrs. Smith in the amount of $7,500.00 is excessive and that the trial court erred in not suggesting a remittitur.

Mrs. Smith was thrown into the dashboard when the car in which she was riding received a severe impact from the rear. The following day she consulted Dr. Grabeel but her condition did not improve and she consulted Dr. Quillian who placed her in the hospital on August 8, 1961, where she was X-rayed, given therapy and analgesics over a period of five days. She then returned home where Dr. Quillian continued to treat her with heat treatment and directed that she spend a great deal of time in bed provided with boards under the mattress. During this period she says her pain was severe. Later, she was again treated with ultra-sound and infrared therapy. There is proof she was still unable at the end of that period to pursue her normal housework and has difficulty sleeping at night.

Mrs. Smith has continued under medical care. Dr. Quillian testified she had not, at the time of the trial, completely recovered. Dr. Price, an orthopedic specialist, expressed the opinion she has a ten per cent permanent disability to the body as a whole.

■ Our cases consistently hold that the primary responsibility for determining excessiveness of verdicts in personal injury cases is lodged with the trial court and that the amount fixed by the jury, if concurred in by the trial judge, will not be disturbed on appeal except upon a showing of an abuse of discretion and that the amount is so large as to shock the judicial conscience. Town of Clinton v. Davis, 27 Tenn.App. 29, 177 S.W.(2d) 848; Foster & Creighton Co. v. Hale, 32 Tenn.App. 208, 222 S.W.(2d) 222; Management Services, Inc. v. Hellman, 40 Tenn.App. 127, 289 S.W.(2d) 711; Graham v. Smith, 46 Tenn.App. 549, 330 S.W.(2d) 573.

■ We can not say the jury abused its discretion in rendering a verdict for $7,500.00 for Mrs. Smith's injuries above described.

It results that the judgments are affirmed and costs adjudged to defendants and surety on the appeal bond.

Cooper, J., and S. J. Milligan, Special Judge, concur.