**Mary Lou PRUETT**

v.

**EVERETT LOWRANCE, INC., et al.**

**Civ. A. No. 6780.**

United States District Court,
E. D. Tennessee, N. D.

June 11, 1970.

Howard F. Jarvis, Knoxville, Tenn., for plaintiff.

George D. Montgomery, Donaldson, Montgomery & Kennerly, Knoxville, Tenn., for defendants.

## ORDER

ROBERT L. TAYLOR, District Judge.

Defendants have moved to set aside the verdict and judgment rendered in favor of Mary Lou Pruett, the widow of Paul Edward Pruett, for seven reasons. Defendant James Albert Dean has also moved that the verdict of $10,000.00 punitive damages awarded solely against him be set aside since there is, as a matter of law, no evidence to support that verdict. The Court is of the opinion that the evidence supports the verdict for punitive damages and denies Dean's portion of the motion.

The first four grounds of defendant's motion relate to the verdict of $275,000.-00 compensatory damages which is larger than that normally allowed in a Tennessee wrongful death action. Tenn. Code Annot. § 20–610.

Paul Pruett, the decedent, was 41 years of age when he died from injuries suffered in a two truck accident. He had driven a truck for Humble Oil for three years before the tragic accident which snuffed out his life. In those years his wages had risen steadily until he was paid $6,076.28 annually in 1969. (Employer-paid health insurance is included in this sum.) Special damages from the accident, medical and funeral expenses, were stipulated at over $2,-700.00. Exhibited medical records show that decedent endured serious, painful injuries for the six day period after the accident and before his death. Defendants stipulated that the decedent's personal habits were exemplary. In maintaining his home for his wife and three children, decedent was said to be a good handyman and gardener, but no dollar value was placed on these activities. A mortality table showed 32.14 years was the average life expectancy for a 41 year old male. The 1937 Standard Annuity Mortality Table, 1 Tenn.Code Annot. 1152.

Notwithstanding the foregoing, defendants urge that the verdict is not supported by the evidence. It is contended that this judgment would yield. $14,000.00 income annually if deposited in a savings account. A four per cent annuity paying $6,076.28 (decedent's wages in 1969) would cost $90,289.60. See 1 Tenn.Code Annot. 1154. Calculations are based on Actuaries Combined Experience Table of Mortality.

On the other hand, the product of decedent's annual wages times his life expectancy when added to his special damages is over $198,000.00. To this sum the wrongful death statute, as construed by the Tennessee courts, allows some amount to be added to compensate for pain and suffering.

A similar question was before this Court in Knight v. Nurseryman Supply, Inc., 248 F.Supp. 925 (1965). In *Knight*, plaintiff's intestate was a 39 year old female with a life expectancy of 36.56 years. Her annual earnings were $3,400.00. The amount of special damages was roughly $6,000.00 and little pain and suffering. Plaintiff was requested to accept a remittitur of $25,-000.00 reducing the judgment to $100,-000.00.

After discussing Tennessee cases dealing with large verdicts, the Court said:

"In the case of Management Services, Inc. v. Hellman, 40 Tenn.App. 127, 289 S.W.2d 711 (1955) an award of $35,000.00 for an eight year old boy was reduced to $20,000.00. In that case, the Court stated:

"'Under our decisions no mathematical rules of computation have ever been formulated making verdicts and judgments uniform in negligence cases. It is the duty of

the courts to take into consideration the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases. Town of Clinton v. Davis, 27 Tenn.App. 29, 177 S.W.2d 848; Foster & Creighton Co. v. Hale, 32 Tenn.App. 208, 222 S.W.2d 222; 15 Am.Jur. Sec. 205, pp. 621, 622.' pp 151, 152, 289 S.W. 2d p. 722.

"It is to be noted that the Court stated that one of the factors that the Court should take into consideration in awarding damages is the 'amount awarded in other similar cases.'

"The award in this case is undoubtedly higher than the usual award rendered in a wrongful death action under the circumstances shown in the record in this Court. We recognize that under the rule in the Sixth Circuit (Werthan Bag Company v. Agnew, [C.A.6, 202 F.2d 119] supra) we do not sit as the thirteenth juror as does the state judge.

"We recognize that the primary problem of fixing the amount of damages is for the jury and that it cannot fix damages with mathematical certainty. This is a diversity case controlled by Tennessee law and we must be guided by what the appellate courts of Tennessee have said in other wrongful death cases and what they have done by way of remittiturs in other cases; also, what the trial courts and juries have done 'in other similar cases.' " Id., p. 928

After examining these cases and cases of a similar nature before this Court, we are of the opinion that there is no substantial evidence to sustain the $275,000.00 verdict.

It is asserted in Ground No. 5 that the Court erred in declining to charge the special requests of the defendant. There were three requests, none of which were applicable to the facts as developed by the evidence in the case.

The Court, in its charge, covered fully the obligations of motor vehicle drivers on the Tennessee highways. The charge as a whole was as favorable to the defendant as the law permitted. In the opinion of the Court it did not commit prejudicial error in refusing to charge the special requests in the language of defendants' counsel.

It is asserted in Ground No. 6 that the Court erred in permitting proof as to the presence of pills in the cab of the defendants' truck because there was no proof whatever of the use of said pills by the driver of the truck. The Court told the jury that unless the pills were connected with the truck driver and affected the safety of his driving, such evidence should not be considered by them and should not be permitted to prejudice the rights of the defendants in any respect.

It is asserted in Ground No. 7 that the Court erred in permitting proof as to the presence of said pills when there was no mention made of such charge of negligence in the statement of the case of plaintiff and no mention was made in the pre-trial order.

The theories of the plaintiff, as stated in the pre-trial order, were that the truck driver was negligent (a) in not having the truck under control; (b) in operating without keeping a proper lookout ahead; (c) in driving recklessly; (d) in exceeding speed limit; (e) in not driving in the proper lane of traffic; (f) in failing to drive in righthand side of roadway when other vehicles were passing; and finally, (g) in operating the truck in wanton and willful disregard for the safety of others lawfully using the highway, all of which amounted to gross negligence.

There was evidence in the record that the pills which were found in the truck were what is known as "pep" pills and would materially affect the safe driving of the operator. Defendants say that they had no knowledge or warning in advance of the trial that pills were found in the truck involved in the acci-

dent. Of all parties who should have known about such pills, the truck driver and his employer, defendants in this case, were in the best position to know.

The Court having considered the motion for a new trial and each ground urged in its support and believing that it is lacking in merit, except as to the question of the amount of damages, it is ordered that the motion, and each ground urged in support thereof, be, and same hereby is, denied, except a remittitur of $65,000.00 is granted, leaving the compensatory damages at $210,000.00. If the remittitur is not accepted within five days from date, a new trial is granted.