Jerry Miller SHIPE

v.

LEAVESLEY INDUSTRIES, INC.

v.

LOGAN CONVEYOR COMPANY.

Civ. A. No. 7226.

United States District Court,
E. D. Tennessee, N. D.

May 7, 1971.

Wayne Parkey, Ayres, Parkey, Skaggs & Ware, Joe Guess, Knoxville, Tenn., for plaintiff.

Jack B. Draper, Arnett, Draper & Hagood, Morton, Lewis & King, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Leavesley Industries, Inc. has moved the Court for a judgment in its favor notwithstanding the verdict of the jury

based upon the sole ground that the Court should reconsider its prior action in overruling the motion for a directed verdict and now sustain the motion on the ground that plaintiff was guilty of contributory negligence as a matter of law. The verdict was for $75,000.00.

■ The question of contributory negligence is ordinarily a question for the jury. Jenkins v. Associated Transport, Inc., 330 F.2d 706, 711 (C.A. 6 1964).

■ In passing upon a motion for a directed verdict, the trial court should take a view of the evidence most favorable to the plaintiff and if reasonable minds could draw different conclusions from the evidence and reasonable inferences to be drawn therefrom, the motion for a directed verdict should not be sustained.

In our case, plaintiff was hurt while located on an overhead track used by electric cranes and while so located one of defendant's cranes operated by its employee ran against and over the body of plaintiff, thus causing painful and permanent injuries to his left leg and foot.

■ Defendant claimed that plaintiff was negligent in going on the track without disconnecting the electricity and that such negligence barred his recovery. We think it was a question for the jury as to whether plaintiff was negligent in working on the track without disconnecting the electricity that powered the electric cranes, and if negligent, whether such negligence was the proximate cause of the accident and resulting injuries.

We are of the opinion that it was also a question for the jury as to whether the defendant's crane operator was guilty of proximate negligence.

It is concluded that the Court did not err in refusing to sustain the motion for a directed verdict as there was sufficient evidence to go to the jury on the questions of negligence and contributory negligence.

Accordingly, the motion for a judgment notwithstanding the verdict of the jury is denied.

■ In the alternative, defendant moves for a new trial upon the grounds that:

(a) Plaintiff was guilty of proximate or remote contributory negligence. What has heretofore been said disposes of this ground adversely to the contention of the defendant.

(b) In the alternative, if the defendant was guilty of proximate negligence in the operation of the overhead electric crane, then the third party defendant, Logan Conveyor Company, in whose behalf the crane was being used, was also guilty of proximate negligence in that its employee was within a few feet of the plaintiff immediately before and at the time of the accident, saw the crane approaching and gave no warning to the plaintiff or the crane operator. Defendant, therefore, claims that the verdict in the third party action was against the clear weight of the evidence.

■ A federal district court does not sit as a thirteenth juror. Its duty is to examine the evidence to determine if there is any substantial evidence to support the verdict and if the verdict is supported by substantial evidence, the verdict should stand, even though the district court might have voted differently than jurors had it been a member of the panel. Knight v. Nurseryman Supply, Inc., 248 F.Supp. 925 (D.C. 1965). See: Werthan Bag Corporation v. Agnew, 202 F.2d 119 (C.A. 6 1953).

We believe there was substantial evidence to support the verdict of the jury, except as to the amount of damages awarded, and this ground is overruled.

(c) The verdict of the jury is excessive, particularly when remote contributory negligence is considered, and the Court should order a remittitur of the excess damages.

This ground presents a more serious question. Plaintiff is a young man, twenty-six years of age, with a high school education, who has had four years training and is a journeyman electrician. He was injured on February 28, 1969. He was working on conduits from a ladder which was 25 to 26 feet in the air. Although there was a flashlight, horn and bell on the crane, no signal was given by the operator to plaintiff before he was injured. The crane ran over his left leg causing serious nerve and bone injuries to that leg. He was in the hospital approximately 72 days. The skin on his leg around his knee was torn, necessitating two skin grafts and resulting in scarring. He was off from work four months and his wages are around $200.00 per week. His injured leg bothers him now. He has difficulty in standing on the leg too long at a time; knee hurts at times. He had a private nurse for the first week. His hospital and medical bills amounted to $6,163.79 and he lost approximately $3,600.00 in wages. He can water ski on the leg but it hurts afterwards. He returned to work four months after the accident and has been working ever since, although he stated that his leg pains him at times and that he was restricted in the use of it in climbing, stooping, etc.

Doctor Burkhart, an orthopedist, testified that one of the bones—the fibula—of the leg was out of proper joint; that the knee was unstable when he last saw him because the ligaments were not holding the knee; that such a condition presupposes arthritis in the knee because some of the ligaments that support the bones are missing. There is a possibility that pain will increase in intensity. He removed part of the bone in the leg. He stated that the injured condition of the leg was permanent and he fixed plaintiff's disability at 45% to the leg.

Although the Workmen's Compensation Law of Tennessee has little or no bearing on a tort case under the Tennessee law, it is interesting to note that plaintiff's recovery under the Workmen's Compensation Law, T.C.A. 50–1007, for temporary total disability for sixteen weeks at $47.00 per week would have amounted to $752.00, and that his permanent partial disability to the leg —200 weeks at $47.00 per week—would have amounted to $9,400.00. These amounts, in addition to the $6,163.79 medical expenses, would have totaled $16,315.79.

Plaintiff insists that $75,000.00 is not excessive and cites as the case more nearly in point to support his position that the award is not excessive of Henson v. Powers, 53 Tenn.App. 504, 384 S. W.2d 452 (1964). The injuries in that case were described as follows:

"As a result of the collision, plaintiff sustained severe injuries consisting of a broken nose, a crushed right knee, severe lacerations of the left knee, laceration of the patella tendon, laceration of the thumb tendon, and a severe compound fracture and crushing of the right leg in the vicinity of the ankle. Plaintiff's right leg and ankle became infected and drained profusely for months. Plaintiff underwent fourteen or fifteen operations, including skin grafts affecting the area of his right ankle. After eight months of exposure, the infected open part of plaintiff's right leg was finally closed; but up to the time of the trial, his ankle had failed to fuse. According to medical testimony, he has sustained a 40 to 50% disability of his right leg." p. 509, 384 S.W.2d p. 454.

It is obvious from the foregoing description of the injuries by the Court that Henson's injuries were not only more numerous, but were much more serious than those of plaintiff. Henson underwent fourteen or fifteen operations, while plaintiff underwent one bone operation and two skin grafts.

Another case relied upon by plaintiff is Baker v. Huber & Huber, which, ac-

cording to the brief, was tried in Middle Tennessee. We have not had access to the record in that case.

Plaintiff also cites numerous state cases other than Tennessee cases. Cases from other jurisdictions may be helpful, but are not necessarily controlling.

In addition to the state cases, plaintiff cites a federal case from the Fifth Circuit and a district court case from Rhode Island. We do not consider any of these cases controlling of the case under consideration.

Defendant cites the case of Whaley v. Associated Transport, Inc., 330 F.2d 706 (C.A. 6, 1964), a case that originated in this Court. The jury's verdict in that case was $100,000.00 which was held not to be excessive. Whaley was described by one of the doctors as being "the most or at least one of the most severely injured patients that I have ever seen." This Court may add that he was one of the worst burned persons that has ever litigated in this Court. The injuries in the present case do not compare in any respect with the injuries sustained by Whaley.

Another case cited by defendant is that of Tracy v. Finn Equipment Company, 290 F.2d 498 (C.A. 6, 1961), which also originated in this Court. Tracy suffered injuries which resulted in the amputation of his left arm. The award was $65,000.00.

During the oral argument, counsel for defendant referred the Court to 11 A.L.R.3d 269 et seq., which contains a long list of cases dealing with various injuries, a number of which deal with leg injuries. These cases may have some bearing on our case, but none of them are controlling.

Defendant also cited the case of Thomas v. Williamson, 58 Tenn.App. 444, 431 S.W.2d 287, decided by the Court of Appeals of Tennessee, Middle Section. In that case, an award was made to a thirty-eight year old man who suffered five broken ribs, a broken arm, a broken leg and foot, a broken pelvic bone and a deep scalp wound and other permanent injuries. The Court correctly held that a verdict of $10,000.00 for these injuries were not excessive.

■ The question of damages is a question primarily for the jury. The jury cannot fix damages with mathematical certainty. The trial court in reviewing the verdict of the jury as to damages must consider, among other things, the nature and extent of the injuries, the suffering, expenses, loss of wages and diminution in earning capacity, life expectancy, and amounts awarded in Tennessee, particularly this jurisdiction, in similar cases.

In dealing with the question of excessive damages in the case of Pruett v. Everett Lowrance, Inc., 314 F.Supp. 282 (E.D.Tenn.N.D., 1970), we said:

"After discussing Tennessee cases dealing with large verdicts, the Court said:

" 'In the case of Management Services, Inc. v. Hellman, 40 Tenn. App. 127, 289 S.W.2d 711 (1955) an award of $35,000.00 for an eight year old boy was reduced to $20,000.00. In that case, the Court stated:

" ' "Under our decisions no mathematical rules of computation have ever been formulated making verdicts and judgments uniform in negligence cases. It is the duty of the courts to take into consideration the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases. Town of Clinton v. Davis, 27 Tenn.App. 29, 177 S.W.2d 848; Foster & Creighton Co. v. Hale, 32 Tenn.App. 28, 222 S.W.2d 222; 15 Am.Jur.Sec. 205, pp. 621, 622," ' pp. 151, 152, 289 S. W.2d p. 722.

" 'It is to be noted that the Court stated that one of the factors that the Court should take into consideration in awarding damages is the "amount awarded in other similar cases."

" 'The award in this case is undoubtedly higher than the usual award rendered in a wrongful death action under the circumstances shown in the record in this Court. We recognize that under the rule in the Sixth Circuit (Werthan Bag Corporation v. Agnew, [C.A.6, 202 F.2d 119] supra) we do not sit as the thirteenth juror as does the state judge.

" 'We recognize that the primary problem of fixing the amount of damages is for the jury and that it cannot fix damages with mathematical certainty. This is a diversity case controlled by Tennessee law and we must be guided by what the appellate courts of Tennessee have said in other wrongful death cases and what they have done by way of remittiturs in other cases; also, what the trial courts and juries have done "in other similar cases." ' " pp. 283, 284.

 We are of the opinion that the verdict in this case is substantially higher than verdicts in this jurisdiction in other cases for similar injuries. See Knight v. Nurseryman Supply, Inc., supra.

Accordingly, a remittitur of $25,000.-00 is ordered, which will reduce the original judgment of $75,000.00 to $50,-000.00. If this remittitur of $25,000.-00 is not accepted by the plaintiff within ten days from date, a new trial will be granted, except as to subsection (b) of paragraph 2 of the motion for judgment notwithstanding the verdict or in the alternative for a new trial, which deals with the third party action.